(No. 32932.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WAYNE ADAMS, Plaintiff in Error.

*Opinion filed November 18, 1953.*

CHARLES A. BELLOWS, of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and ARTHUR F. MANNING, all of Chicago, of counsel,) for the People.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Plaintiff in error, Wayne Adams, and one Robert Wayne were jointly indicted in the criminal court of Cook County for the crime of robbery while armed. Robert Wayne pleaded guilty to the charge, testified against the plaintiff in error in this case, and was subsequently granted probation. Plaintiff in error was found guilty by the jury and was sentenced to the penitentiary, the court fixing the minimum of his term at five years and the maximum at twenty years. His motions for a new trial and to vacate the judgment were denied and he appeals to this court by writ of error.

To avoid confusion due to the similarity of their names we shall refer to the plaintiff in error Wayne Adams as "Adams" or "defendant" and to Robert Wayne as "Wayne" or "codefendant."

The defendant contends in this appeal that (1) the People failed to prove his guilt beyond all reasonable doubt; (2) the prejudicial conduct of the assistant State's Attorney, in his cross-examination of defendant, deprived him of a fair trial; (3) the court erred in refusing to grant him a new trial on his motion based on newly discovered evidence; and (4) the court was prejudiced against him and prevented him from receiving a fair trial.

One Wanda Evenson testified, for the People, that on April 6, 1952, between 9:30 and 9:45 P.M., a car parked at the curb next to her snack shop on Western Avenue in the city of Chicago. A man alighted from the car, entered her shop, pointed a gun at her and demanded money, and she gave him fifty dollars; that he demanded four packs of cigarettes and told her to make him a "coke;" that he drank the "coke" and left, entered the parked car and it was driven away; that she could not see how many people were in the car but she saw one silhouette on the driver's seat. She further testified that she subsequently identified

Robert Wayne as the man who entered the shop and that when she saw the defendant Adams at the detective bureau he told her he was driving the car at the time of the robbery and he offered to make restitution.

Robert Wayne testified for the People that he and defendant Adams committed the robbery; that Adams drove the car, that both were armed, and that when he told defendant that this place looked good, that he was going to enter it and to pull over and wait, defendant said "all right." He testified that he entered the shop, told the lady it was a holdup and he wanted her money; that she gave him the money from the cash register and he returned to the car the defendant was driving and they drove away. He stated that he procured his gun from the defendant and that he gave the defendant half the money. He further testified that he saw defendant on April 7, 1952, at the Eleventh Street police station, that questions were asked both of them about the robbery, that the questions and answers were reduced to writing and that both he and defendant signed the statements. Upon cross-examination he stated that he had been indicted for this robbery, had entered a plea of guilty before another judge of the criminal court, and that his application for probation was then pending. He denied that he had been promised probation.

Before the conclusion of the codefendant's cross-examination, in the presence of the jury, the assistant State's Attorney announced to the court that the State was unable to locate a police officer who would be a necessary witness to the written statement and that it was being withdrawn. The court stated that it could not be withdrawn because it had never been offered in evidence, but it had been identified by the witness Robert Wayne and had been marked as People's Exhibit 3. On motion of defendant's counsel the court thereupon struck from the record all the evidence given in regard to the statement.

A police officer testified that he and two other officers arrested Wayne driving an automobile, that they found a 45-caliber automatic pistol in the glove compartment, and that they subsequently arrested defendant at the apartment of one Pearl Larson and found a blue steel foreign make automatic pistol in his topcoat pocket. Upon cross-examination the witness denied any mistreatment of the defendant by the police.

One Joe Lappin and Pearl Larson testified on behalf of the defendant that he was in the tavern where Lappin was employed as a bartender the entire evening of April 6 and did not leave there before midnight.

The defendant, testifying in his own behalf, denied any knowledge of the robbery but admitted that he had told Mrs. Evenson that he had driven the car and that he offered to make restitution. He further testified that his foreign make automatic pistol, which he had previously shown to the codefendant, was stolen from the glove compartment of his car on the night of April 4. He testified that after his arrest he was taken to the central police building at Eleventh and State streets, where the officers wrapped his wrists, put a pair of handcuffs on him and hung him up in a washroom so that his toes just touched the floor and beat him in the stomach and on the back of the neck; that he "passed out" and when he came to the codefendant was in the room; that the officers told the codefendant to tell him what he had told them and codefendant then said, "Wayne, I told them that you were with me." Defendant testified that the officers then left the room and the codefendant then told him that the officers knew there were two men in the car, that they beat him and he had to name somebody or they would have continued to beat him. Defendant then testified that he told the officers he had no statement to make but would sign any statement they wanted to write and would do whatever they wanted him to do, and that

thereafter both he and codefendant signed several statements the officers had prepared.

Upon cross-examination the defendant stated that he answered only three or four questions when the officers were interrogating them and codefendant Wayne answered all the others. The assistant State's Attorney then proceded to cross-examine defendant, over objections of defendant's counsel, by asking defendant, in the usual manner, were certain questions asked of him and did he make certain answers, and read from the alleged statement more than 25 questions and 25 answers covering the entire participation in the offense by the defendant. Typical of such questions and answers were these:

Q. Wayne Adams, what part did you play in the robbery of this combination soda fountain and hamburger stand at 11400 South Western Avenue?

A. I was the driver of the black Chevrolet sedan, a 1951 Model, that was used by Robert Wayne and myself in this robbery.

Q. Wayne Adams, did you have a gun with you at that time?

A. Yes, I had a small, blue steel, foreign-make automatic weapon.

Q. Did you know that Robert Wayne was going into this store to hold it up?

A. I did not know for sure he was going to hold it up. He told me to park where I was, he was going to look the place over. It was understood by that if the place looked like it could be taken he would go ahead and hold it up.

Q. Wayne Adams, this statement consisting of four pages you have made here with Robert Wayne is a free and voluntary statement made by you without any promises, threats or inducements of any kind, whatsoever, is that right?

A. Yes, that is right.

The statement is not a part of the record here and we do not know if these 25 questions and answers constitute the entire statement, but they are certainly sufficiently comprehensive to constitute all the essential and material facts necessary to a full and complete confession of the offense charged.

The People attempt to defend this as cross-examination for impeachment and contend that it is always competent to show, for impeachment, that a witness made a statement outside of court concerning material matters inconsistent with his testimony on the stand. If this be true in the circumstances of this case, then the rule requiring the State to prove the voluntary character of an alleged confession is completely nullified.

Before the defendant took the stand to testify, the State announced that it was unable to comply with the law to prove this statement, withdrew it from the evidence, and the court struck all testimony heard in regard to such statement. The statement was then no longer a part of this case. Thereafter defendant, in his testimony, stated that he signed a statement or statements under coercion by the police officers. He did not testify to the contents of such statement, but merely that he had signed a statement.

It cannot be contended that defendant's testimony that he signed a coerced statement makes such statement competent for any purpose. The tenor of such testimony is that the statement is not the statement of the defendant and he certainly cannot be impeached by statements which the law refuses to recognize as his voluntary statements.

This method of cross-examination resulted in the introduction into evidence of defendant's confession without the preliminary proof of its voluntary character which the law requires, and constitutes reversible error. A confession not proved to have been voluntarily made is regarded by the law as "testimonially untrustworthy." (Wigmore on Evi-

dence, Confessions: sec. 822.) That defendant denied making the statements is immaterial, he still has the right to deny them even after their voluntary character is proved and they are admitted into evidence. Here the defendant's full confession has been heard by the jury with the question of its competency undetermined.

Although counsel for defendant has failed to cite them in his brief, the cases of *People* v. *Sweeney*, 304 Ill. 502, and *People* v. *Maggio*, 324 Ill. 516, are directly in point on the incompetency of such cross-examination. In the *Maggio case*, as in the instant case, the State's Attorney announced that he would not introduce the statement signed by the accused in evidence, and then proceeded in his cross-examination to require the accused to state whether certain questions were asked of him and certain answers given, reading them from the alleged statement, precisely as was done here. This court there held such cross-examination to be error, stating, at page 528 of that opinion, "Since the supposed confession itself was of no probative value and incompetent as evidence, it was equally incompetent to permit the introduction of a part of it indirectly by reading from the written statement and compelling the defendant to answer whether he had made those statements." See, also, *Cross* v. *State*, (Tenn.) 221 S.W. 489, 9 A.L.R. 1354, annotation at page 1358

The People cite *People* v. *Popovich*, 295 Ill. 491, and *People* v. *Skolnick*, 359 Ill. 333, to support their theory that such cross-examination was competent. Neither deals with cross-examination based on an alleged coerced confession. In the *Popovich case* the defendant was cross-examined in regard to oral statements he made to witnesses prior to his trial different from his testimony and thereafter such witnesses were called in rebuttal. The statements were not confessions, there was no question of coercion, and the witnesses testified after the foundation was laid. In the *Skolnick case* the defendant, charged with

robbery, testified that $25 he had when arrested had been collected by him as a business collection. On cross-examination he was asked if he had not told police he got the money in a dice game in a gambling house. He denied this, although a police officer had previously testified he made such statement. His counsel objected that the cross-examination was questioning him about other crimes, and the only holding by the court was that this questioning did "not come within the category of prohibited proof concerning other crimes."

Since we reverse this conviction for the error committed in the cross-examination of defendant, it is unnecessary to discuss the other alleged errors as they should not recur in another trial.

The judgment of the criminal court of Cook County is reversed and this cause is remanded for a new trial.

*Reversed and remanded.*