People of the State of Illinois, Plaintiff-Appellee, v. Arthur Davis, Defendant-Appellant.

Gen. No. 50,424.

First District, Fourth Division.

April 7, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall A. Patner, Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Carmen Speranza, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

The defendant, Arthur Davis, was convicted of the possession of narcotics in violation of chapter 38, section 22-3 of the Illinois Revised Statutes, and was sentenced to serve a term of not less than three nor more than eight years in the penitentiary. On appeal he urges that the judgment be reversed on the ground that the evidence was not sufficient to support a conviction since the State failed to meet its burden of proof of identification beyond a reasonable doubt.

From the record it appears that on October 21, 1964, at about 12:30 a. m., two police officers—Officer Jurich and Officer Daniher—were in a police car at 39th Street and South Park in Chicago, when they saw a 1952

Hudson with broken rear reflector travelling east on 39th Street. They followed the car and caught up with it at Vincennes Avenue where the Hudson was making a left turn. They observed that there were three occupants sitting in the front seat of the car. Officer Daniher testified that as the car made a left turn the police put their spotlight on it, and after the turn was completed he observed an arm, visible up to the shoulder, come out of the right window; he further testified that it was the arm of defendant Davis, who was sitting on the right side of the front seat, and that the defendant then threw away two tinfoil packets. Both cars stopped; the police officers got out of the car and Officer Daniher picked up the packets, opened one of them, and found smaller packages inside which contained a white powder. These packets were introduced into evidence at the trial. At the time they were thrown away the squad car was about 10 feet behind the Hudson. After they were picked up from the ground the officers approached the Hudson and ordered the occupants out of the car. Officer Jurich, who had been driving the squad car, corroborated the testimony of Officer Daniher as to their following the Hudson, and stated that he saw part of an arm go out of the right side of the Hudson window, but all he could see from his position in the squad car was the shoulder. At that time Officer Daniher had remarked to him that someone was throwing something out of the window. Officer Daniher further testified that when the police noticed the contents of the packages they put the occupants of the Hudson under arrest and searched them. Officer Daniher asked the three occupants whether or not they had thrown the packages out and each said he had not, and they all denied having had possession of narcotics. It was stipulated at the trial that the packages introduced in evidence contained heroin.

The defendant testified on his own behalf and told the court that he was walking home in the early morning

302

hours on October 21, 1964, when he was offered a ride by his friends who were in the Hudson in question. The driver of the car was one Howard Davis, and the other person in the car was one Chamberlain. The defendant testified that this was the first time he had met Chamberlain, although he had seen him before. He stated that when the Hudson turned left on Vincennes Avenue the driver noticed a spotlight and said, "It's the police." The defendant stated that he turned around to look out the back of the car, at which time Chamberlain moved his arm across the defendant toward the window and threw something out; that he did not know what was being thrown out; and that he had only been in the car for three or four minutes when all of this occurred. He then stated that the police officers searched the three occupants of the Hudson, and that Officer Daniher then showed Officer Jurich the packages he had found behind the Hudson. The three occupants of the car were taken to the police station, questioned as to their names and addresses, and were again searched. The defendant had identification on him showing that he had just been released from prison. The police officers then charged the driver of the Hudson with violations of traffic regulations, Chamberlain with disorderly conduct, and the defendant with violating the narcotics law. At trial the defendant expressly denied that he had in his possession or control any drugs as alleged in the indictment, and said that he did not know whether or not either of his companions had narcotics in their possession at the time he entered the car. He further testified that he had been released from prison 40 days before being arrested on the present charge; that he had been working and was staying with a friend; that the police asked him if he was on dope and he told them he was the only one in the car who wasn't on dope. The trial court asked the defendant if this was the first time he had stated that Chamberlain had thrown his arm across the defendant towards the

window and the defendant said it was, but that he had not previously been specifically asked that question. Officer Daniher, however, testified that at the time of arrest the defendant had said he did not know anything about the package thrown out of the window.

 At the close of the State's case the defendant had moved that the court find him not guilty on the basis that the State had not presented a prima facie case identifying him as the person who had thrown the packets from the car. The court properly denied the motion and stated that it considered Officer Daniher's testimony sufficient to amount to a positive identification. There is no question that one of the occupants of the car was in possession of the narcotics and had thrown the tinfoil packages from the window. The question before the trial court was whether or not the defendant was sufficiently identified as that person. In People v. Gray, 24 Ill2d 229, 181 NE2d 162, it is held that the testimony of a witness as to identification, if positive, and if the witness is credible, is sufficient to convict, even though contradicted by the accused. The trier of fact has the opportunity to observe the witnesses giving their testimony; the reviewing court has before it only the cold record of the proceedings. Where the cause is tried without a jury it is the function of the trial court to determine the credibility of the witnesses and the weight to be afforded their testimony. Where that evidence is merely conflicting a reviewing court will not substitute its judgment for that of the trier of the fact. People v. Clark, 30 Ill 2d 216, 195 NE2d 631.

 The defendant also argues that the evidence of the police officers was in conflict and points out that they did not testify in agreement as to the exact place their spotlight was turned on the Hudson; that there was some discrepancy as to the place where the tinfoil packages were found on the street; that Officer Jurich said they were found near the right front door of the Hudson,

while Officer Daniher said they were found next to the front fender of the patrol car. The defendant argues that Officer Jurich testified that Chamberlain, who was sitting in the middle of the front seat of the Hudson, wore a brown coat, while Officer Daniher said Chamberlain wore a black jacket. Such discrepancies are not sufficiently material to require a reversal.

The defendant's testimony was contradictory and confused. He testified that after the three men in the Hudson saw the police car following them ". . . Chamberlain was sitting next to me. He threw something— passed his arm and went by me—his arm went up against me towards the window." When defendant was asked whether he saw anything thrown he answered, "I didn't see, actually, but I know something—probably, that's what it was." He was asked, "You didn't see anything thrown?" He answered, "No, I didn't see anything thrown." He stated that he did not know what Chamberlain had with him; that at the time of the arrest the police officers had no conversation with any of the occupants of the Hudson car; that he did not know whether either of the two men with him had any unlawful narcotics in their possession because he had just gotten into the car. On cross-examination he testified that after the officers found the package of narcotics they asked each of the occupants of the car if they were on dope. Chamberlain and Howard denied that they were, and the defendant said, "No, I'm the only one in the car that wasn't on dope." He further testified that he found out while they were in the patrol car going to the police station that Chamberlain had in his possession ten more packages of narcotics and that Chamberlain and Howard at that time stuffed them up their noses. That this could be done in the presence of the police officers without their observing the actions of Chamberlain and Howard is unbelievable.

305

■ It is the rule that when a defendant voluntarily and knowingly takes the witness stand to testify on his own behalf he becomes the same as any other witness and runs the risk of being disbelieved. People v. Lane, 29 Ill2d 326, 194 NE2d 272; People v. Hansen, 28 Ill2d 322, 192 NE2d 359; and People v. Songer, 28 Ill2d 433, 192 NE2d 861. In the Songer case the defendant gave testimony attempting to explain his presence at the scene of a burglary. The Supreme Court said:

> "As we stated in People v. Davis, 27 Ill2d 33, 'When a defendant elects to justify or explain his presence at or near the scene of a crime, while denying participation, he must tell a reasonable story or be judged by its improbabilities.' The question of whether or not to accept this explanation was for the jury and we can see no reason why their determination should be set aside in this case. The aforementioned evidence in our opinion fully supports the conclusion that the defendant was a participant in the burglary along with Hale and Sanner."

■ The defendant argues that in finding him guilty the trial court was relying on the weakness of the defendant's case and not the strength of the State's proof. In support of that contention he cites People v. Stevenson, 25 Ill2d 361, 185 NE2d 199, in which case the court said:

> ". . . It is the contention of the People that the record here presents only a conflict between the testimony of Gondolfo and defendant and that we should abide by the trial court's resolution of such conflict. *In our opinion, however, the testimony of the complaining witness is so unconvincing, conflicting and unreasonable that a reasonable doubt of the defendant's guilt must be said to exist.*" [Emphasis supplied.]

However, the court denied defendant's motion to find him not guilty at the close of the State's case and thereby found that a prima facie case had been presented. Since the trial judge apparently gave no credence to defendant's testimony, defendant was proved guilty beyond a reasonable doubt.

In the instant case the testimony of the two officers introduced by the State is direct and clear, with certain minor conflicts. It cannot be said that the State's evidence is improbable, unconvincing or contrary to human experience. The judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

DRUCKER, P. J. and ENGLISH, J., concur.