THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HENRY KING, Defendant-Appellant.

(No. 12087; ▮▮▮▮▮▮▮▮

Fourth District—September 5, 1974.

*Rehearing denied October 8, 1974.*

John F. McNichols, J. Daniel Stewart, and Thomas Nelson, all of State Appellate Defender's Office, of Springfield, for appellant.

Richard J. Doyle, State's Attorney, of Danville (Frederick Underhill, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE CLYDESDALE delivered the opinion of the court:

Henry King was indicted for the attempted murder and aggravated battery of Roy McGrown; the unlawful use of a weapon; and reckless conduct toward and aggravated battery of Toni McGrown. A Vermilion County jury subsequently found defendant guilty of the aggravated battery of Roy McGrown, guilty of the unlawful use of a weapon, and guilty of reckless conduct toward Toni McGrown, but not guilty of the other offenses. The trial judge entered judgment on the jury verdicts and sentenced the defendant to the penitentiary for a period of not less than 2 years nor more than 5 years for the offense of aggravated battery only. Defendant here appeals from the aggravated battery conviction.

The defendant urges upon appeal that he was not proved guilty beyond a reasonable doubt and that the trial court erred in permitting the State to use out-of-court statements of the defendant in an attempt to impeach

him without first holding a hearing to determine the voluntariness of the statements.

In the view we take of the case, it is unnecessary to set out the evidence in complete detail. The alleged crimes took place in the early morning hours of July 3, 1971, in a Danville, Illinois, tavern known as the After Hours Club. The defendant, with some friends, was seated in one booth of the tavern while the victims, Roy McGrown and his sister, Toni McGrown, with some friends, were seated in another booth. Due to a parking lot incident earlier in the evening, bad blood had developed between the defendant and Roy McGrown.

After an encounter in the tavern, shooting broke out between the defendant and Roy McGrown. As a result thereof, Roy McGrown, Toni McGrown and the defendant suffered gunshot wounds requiring the hospitalization of all three.

As is customary in a scenario of this type, there were many conflicting stories told by the witnesses. The jury, however, chose to believe the testimony of the McGrowns and the evidence adduced from various other prosecution witnesses to the shoot-out. Basically this proof was to the effect that the defendant was the aggressor and that he fired the first shot. Defendant testified that it was McGrown who shot first. The defendant's version was substantiated by an employee of the tavern who was admittedly a close friend of the defendant but was not substantiated by anyone who was in the booth with him.

■■ Upon this state of the record, we conclude that the evidence was sufficient to prove the defendant's guilt beyond a reasonable doubt. Since it is for the trier of fact, having the opportunity to observe the witnesses to determine their credibility and resolve conflicts in the testimony, this court will not substitute its judgment for that of the trier of fact. *People v. Davis*, 71 Ill.App.2d 300, 218 N.E.2d 850; *People v. Everett*, 14 Ill.App.3d 421, 302 N.E.2d 723.

The defendant next urges that the trial court erred in permitting the State to use his out-of-court statements in an attempt to impeach him without first holding a hearing to determine the voluntariness of the statements.

The State first laid the foundation for the impeachment of the defendant during cross-examination of the defendant. The defendant stated that he was interviewed by the police at the hospital on July 8 while he was doped up, had tubes in his nose and while he was dazed and sleepy.

Defendant admitted stating to the police officer, "I don't know who shot me," and "I don't recall [who was in the booth where he was standing]." Defense counsel objected to the questioning on the ground that the defendant was under sedation at the time the statements were

given. The trial court overruled the objection and defendant was then confronted with prior statements such as, "I never saw anyone with a gun"; "No, I didn't [have a gun]"; "No, I don't [know if Roy McGrown had a gun]," and "I don't know [Roy McGrown by name]," etc. Defendant also stated that he signed the statement only so he could get some sleep, and that he was tired, hurting and sleepy.

The State later produced one Larry Vaugh, the officer who interviewed the defendant at the hospital, in rebuttal. Vaugh testified that he and Officer Oliver advised defendant of his rights, read the defendant the requisite custodial form, and defendant signed it. He further stated that the defendant was coherent, was sitting in his bed, was smoking a cigarette at the time of the interview, and responded to normal conversation. Upon conclusion of the interview, the defendant signed each page of the statement. The State then attempted to introduce the impeaching statement into evidence. Defense counsel objected on the basis that the *Miranda* warnings had not been complied with because it was not expressed to the defendant that he had a right to stop answering questions any time he wished. A further objection went to the voluntariness of the statement because of defendant's questionable physical and mental condition at the time of making the statement.

The court overruled the objections stating the evidence of prior inconsistent statements are admissible for impeachment purposes. The court further stated that this was not a confession but simply a tender of proof of prior inconsistent statements for which the foundation was sufficiently established. Therefore, the court held that any objections regarding voluntariness or the *Miranda* warnings were not well taken.

Defense counsel then asked if the court was ruling as a matter of law that the defendant made the statement voluntarily and in full possession of his faculties. The court replied that he was not passing upon that question, and the objection would be overruled merely because the statement had sufficient probative value on the impeachment question and should be admitted. Three questions taken from defendant's statement were then admitted into evidence over defendant's objection and request for a mistrial.

Defendant's prior inconsistent statements did not constitute a confession and, for that matter, may not have even constituted incriminating admissions. Nevertheless, we believe the defendant's statements clearly fall within the purview of the *Hiller, Tate,* and *Lefler* line of cases.

In *People v. Hiller,* 2 Ill.2d 323, 118 N.E.2d 11, the State did not attempt to introduce the defendant's statement to the police in its case-in-chief but did use it for impeachment purposes during cross-examination of the defendant. Defendant contended the statement was forced and

not voluntary. Nevertheless, the trial court, over objection of counsel for the defendant, admitted certain passages from the statement in evidence without inquiring into its voluntary or involuntary nature. The supreme court in reversing said:

> "If defendant's testimony is true, and there is no denial of it, his statement was not made freely and voluntarily but was obtained by force and the answers put down were not those that he wished to give. With the record in this state, the statement, or confession, of the defendant was not competent for any purpose unless and until its voluntary nature was established. It was, therefore, error for the court to permit the prosecution to cross-examine from the statement and thereby achieve indirectly what it could not do directly". 2 Ill.2d at 327.

In *People v. Tate*, 30 Ill.2d 400, 197 N.E.2d 26, the supreme court re-asserted the principle that the voluntary character of an out-of-court statement must be established before it may be used even for impeachment purposes. The court made reference to its earlier decisions in *People v. Adams*, 1 Ill.2d 446, 115 N.E.2d 774, and to the *Hiller* case.

In *People v. Lefler*, 38 Ill.2d 216, 230 N.E.2d 827, defendant was charged with the murder of his child. Before trial, defendant moved for a hearing on the voluntariness of oral statements made to the police at a funeral home on the day after the death of his child and to a polygraph operator the next day. The trial court denied the request for a hearing on the grounds that the statements were mostly exculpatory and at most constituted admission and not confessions. In reversing, the supreme court said:

> "While the statements of the defendant were not in the strict sense of the word confessions to the crime of murder, it is apparent that they were not entirely exculpatory and that his admissions that he squeezed the child to keep her from crying were incriminating. The authorities in this State appear to be conflicting on the question of whether a preliminary hearing is required to determine the voluntary nature of an admission, as distinguished from a confession. For example, in *People v. Speice*, 23 Ill.2d 40, 46, and *People v. Stanton*, 16 Ill.2d 459, 467, it was held that where a statement is a mere admission no preliminary hearing is required. However, in *People v. Hiller*, 2 Ill.2d 323, where the prosecution attempted to impeach the defendant by reading from a statement he had given, the court held that there should be no distinction between an incriminating statement and a confession and that an incriminating admission should not be admitted in evidence over objection without a preliminary hearing to determine whether it was voluntary.

In our later decisions, without citing or referring to the line of cases represented by *Speice* and *Stanton,* we held, relying upon the *Hiller* case, *that the voluntary character of any out-of-court statement must first be established before the statement may be used, even for impeachment purposes.* (*People v. Newman,* 30 Ill.2d 419, 424; *People v. Tate,* 30 Ill.2d 400, 405.) Our adoption of this rule finds support in the decision of the U.S. Supreme Court in *Miranda v. State of Arizona,* 384 U.S. 436, 476, 16 L.Ed.2d 694, 725, 86 S.Ct. 1602, 1629. We believe that the rule enunciated in these recent decisions of our court and the U.S. Supreme Court, is the proper one and we adhere to it in this case. We must, therefore, hold that the trial court erred in denying the defendant's request for a hearing to determine the voluntary nature of his admissions." (Emphasis added.) 38 Ill.2d at 220.

The United States Supreme Court has apparently set at rest, at least insofar as the necessity of giving the *Miranda* warnings are concerned, the fact that no distinction should be drawn between inculpatory and exculpatory statements. In *Miranda,* 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, the court said:

"The privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination. Similarly, for precisely the same reason, no distinction may be drawn between inculpatory statements and statements alleged to be merely 'exculpatory.' If a statement made were in fact truly exculpatory it would, of course, never be used by the prosecution. In fact, statements merely intended to be exculpatory by the defendant are often used to impeach his testimony at trial or to demonstrate untruths in the statement given under interrogation and thus to prove guilt by implication. These statements are incriminating in any meaningful sense of the word and may not be used without the full warnings and effective waiver required for any other statement." 384 U.S. at 476-477.

■■ We hold likewise that when the voluntary nature of an out-of-court statement is put into question, no distinction should be drawn between inculpatory and exculpatory statements. The court must, out of the presence of the jury, make a finding on this matter.

The State contends, however, that the defendant's statement was not the product of custodial investigation and, therefore, no question of voluntariness need be considered. We do not consider this to be the law in Illinois. A clear distinction must be drawn between the need to inform the defendant of the *Miranda* warnings and the need to determine

the voluntary and involuntary nature of a defendant's out-of-court statement. Under *Miranda*, the warnings must be given provided the defendant is undergoing custodial interrogation. We hold, however, that, whether or not a defendant is in custody is of no importance when defendant is confronted with a statement, either in the State's case-in-chief or on impeachment, which he claims to be involuntary. When the voluntary nature of the statement is properly raised, the court must, outside the presence of the jury, make a preliminary finding that the statement is or is not voluntary. An out-of-court statement made by the defendant while not in custody can be as damaging, or more so, than one made while in custody. A statement involuntarily made can in no way be held to be the statement of the person allegedly making the same. Although most cases on this subject are concerned with statements made while in custody, we see no reason for limiting the application of the rule. The strong and unequivocal language in the *Hiller, Tate* and *Lefler* cases substantiate this view. In the language of the *Hiller* case:

> "To hold otherwise would destroy the guarantees of due process of law which protect an accused from the use of confessions, statements or admissions obtained by force, coercion or violence." 2 Ill.2d at 328.

The cases cited by the State are clearly distinguishable and do not support the argument advanced by it. In the case of *People v. Richards*, 120 Ill.App.2d 313, 256 N.E.2d 475, and in the case of *People v. Fischetti*, 47 Ill.2d 92, 264 N.E.2d 191, the issue raised was the sufficiency and necessity of *Miranda* warnings. In each case, the court held that the defendants were not in custody and the defendants did not make claim that the statements were involuntarily made. In *People v. Tyner*, 49 Ill.2d 207, 274 N.E.2d 20, the defendant was clearly in custody when the statements were made but the court simply held that the statements were voluntary.

The State also contends that the statements made by the defendant, even if not properly admissible as evidence in the State's case-in-chief may, nevertheless, be used to impeach the defendant on cross-examination. In support of its argument, it cites *Harris v. New York*, 401 U.S. 222, 28 L.Ed.2d 1, 91 S.Ct. 643.

In the *Harris* case, the prosecution conceded that the statements allegedly made by the defendant were inadmissible in its case-in-chief due to insufficient *Miranda* warnings. The prosecution nevertheless used the same statements in an effort to impeach the defendant. The Supreme Court held this to be proper and said:

> "The shield provided by *Miranda* cannot be perverted into a

license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." (401 U.S. at 226.) Although seemingly in point, the *Harris* case is clearly distinguishable from the case here. In the *Harris* case, the court particularly noted that the defendant made no claim that the statements made to the police were coerced or involuntary. Here, the defendant King raises this very point.

■■■ We hold, therefore, that the court erred in permitting the use of defendant's statement for impeachment purposes. The trial court failed to hold a hearing outside the presence of the jury to determine the voluntary nature of the defendant's statement as it was required to do. Where the evidence in the case on the merits is conflicting, the use of this statement and the questions asked of the defendant in laying the groundwork for its use, we cannot say that it was harmless error or failed to have an adverse impact on the verdict of the jury. For this reason, we must reverse and remand the case for a new trial.

Reversed and remanded.

SMITH, P. J., and CRAVEN, J., concur.