THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CLARENCE KING, JR., Defendant-Appellant.

Fourth District   No. 14663

Opinion filed June 23, 1978.—Rehearing denied July 21, 1978.

Richard J. Wilson and Charles M. Schiedel, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert C. Perry and James G. Condon, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:
A bizarre case!
Rape, burglary, robbery.
Jury: guilty.
Concurrent sentences: 10-30 (rape); 3-9 (burglary); 3-9 (robbery).
This court affirms.
The home of Clark Chamberlain (aged 88) was broken into in the early morning hours of June 12, 1976, and Chamberlain's 69-year-old niece, Reba Corray, was raped. The residence had previously been a target of a number of breakins in May and early June of 1976, and, after the June breakin it was discovered that the prowler had defecated on the floor of the garage attached to the house.

On July 3, 1976, at about 1:30 a.m., Ms. Corray was lying in bed when she heard a noise as though someone had pushed on the door to her bedroom. She got up, turned on her bedroom light and opened the door. She saw a black man standing in the doorway who turned and ran out of the house.

Clarence King was later charged with one count of rape, one count of robbery, and two counts of burglary stemming from the June 12 incident and two counts of burglary pertaining to the July 3 incident. At trial, Ms. Corray testified that she had not been able to see the man who raped her because the man had held a pillow over her face during the attack. As to the July 3 incident, Ms. Corray could not identify the prowler but did state that it was a black man wearing a jersey sweatshirt and long pants of an orange color. She testified that the person could have had another shirt on underneath the jersey as the sweatshirt was rather bulky. Although she could not see the intruder's face, she did have a view of his jaw and chin and stated that she did not see a beard on the man.

An officer who investigated the July 3 breakin testified that Ms. Corray had told him that the man was approximately 5'7" and weighed 140 pounds and that she believed she could recognize the prowler if she saw him again. This testimony, however, was contradicted by Ms. Corray who declared she had never made such a statement because she had not been able to obtain an adequate view of the intruder's face.

As to the earlier rape episode, an examining physician testified that Ms.

Corray had guessed the assailant to be thin and strong. Furthermore, Ms. Corray told a policewoman that the man had a "slight build." It was later brought out at trial that the defendant was actually about 5'11" and 200 pounds. In fact, Ms. Corray admitted at trial that King did not have a "slight build."

Physical evidence was very important to the State's case. Black hair fragments of "Negroid origin" were found in the sheets from the victim's bed after the rape and Ms. Corray testified that she had never had a Negro individual in her bedroom.

After the rape incident, further investigation by police discovered human defecation on the side of the Corray house and on the ground next to the house. This discovery correlated to the defecation in the Corray garage after an earlier attempted breakin.

But the lynchpin of the prosecution's case was the fact that King's fingerprints were found at the point of entry for the breakins. The defendant's palm print and fingerprint were found on the inside of a window frame and on the screen which had been on the window on June 12, the day of the first breakin. Defendant's fingerprint was also found on a pane of glass which had been in a window on July 3, the day of the second breakin.

The jury returned guilty verdicts on rape, robbery and one count of burglary. King was subsequently sentenced to concurrent terms of 10 to 30 years for the rape and 3 to 9 years each for burglary and robbery.

On appeal, King argues that: (1) he was denied due process by the trial court's refusal to allow him to call witnesses to testify in support of defendant's theory that another individual committed the offense charged; and (2) the trial court erred in failing to hold a hearing on a motion to suppress an in custody statement of the defendant which was used by the State in rebuttal.

Before reaching the substantive aspects of issue number 1, the State argues that King has waived the contention by not raising it in his post-trial motion. It contends that the only mention of the issue was point number 21 of defendant's post-trial motion which stated that the trial court erred in excluding evidence of defecation at the scene of the offenses.

The State, however, overlooks defendant's post-trial motion points 36, 38, and 41 which adequately preserve the issue for review by this court. Specifically, point 36 alleges:

> "It was error to deny the defendant the introduction of evidence as to the police investigation of Prentice Taylor, Jr. as a suspect, based upon the offer of proof."

This point alone sufficiently preserved the issue for appellate review.

## I

Proceeding now to the merits of the case, King argues that evidence that Prentice Taylor, Jr., committed the offense should have been admitted at trial. The defense called policeman Gary Herbert to the witness stand and he testified that he had been summoned to the scene of the breakin at the Corray residence. Officer Herbert stated that he had not gone to the 900 block of North Gregory but acknowledged he had signed a report which stated that he had, in fact, gone to the 900 block of North Gregory. At this point, the prosecution objected to the defendant's line of questioning on grounds of relevancy and the objection (following an in-chambers conference) was sustained by the trial court.

At the conference in the judge's chambers, the defense informed the court that the police report would show that a man named Prentice Taylor, Jr., had been the subject of an investigation following the July 3 breakin at the victim's residence. Taylor apparently had some type of anal fixation and had a reputation for defecating in public. Furthermore, Prentice Taylor had been convicted of public indecency and had been charged with deviate sexual assault and rape in 1973.

Moreover, the defense pointed out that Taylor's physical characteristics (5'10", 165 pounds) more closely resembled the description given by Ms. Corray of the intruder (5'7" and 140 pounds) than did the characteristics of defendant King (5'11" and 200 pounds). Defense counsel also contended that the police report would reveal that Taylor had been seen in his home (presumably the 900 block of North Gregory) in the early morning hours on July 3 and had been wearing a dark shirt with a white T-shirt underneath it.

The trial court denied defendant's offer of proof and refused to allow testimony into evidence concerning the investigation of Prentice Taylor, Jr. On appeal, defendant claims that the trial court's refusal to allow in evidence of the investigation of Taylor denied him due process. The State counters by arguing that the defense did not show a sufficient basis for the admission of this evidence.

■■ When the guilt of another person is inconsistent with the guilt of the defendant, it is relevant for the defendant to present evidence that such other person committed the crime. (*People v. Nitti* (1924), 312 Ill. 73, 143 N.E. 448.) However, evidence connecting a third person with the commission of the crime may only be shown if and when the third person has been closely linked to the commission of the crime. Remote conduct of the third person not connected with the crime itself may not be shown. *Nitti.*

In *People v. Dukett* (1974), 56 Ill. 2d 432, 308 N.E.2d 590, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226, defendant attempted to introduce evidence that a third party had threatened the murder

victim. The supreme court decided that there was nothing to connect the third party to the victim's shooting. At most, the proposed testimony showed that the third person and victim disliked each other and that the third party was concerned that he would be charged with the crime. In short, the supreme court felt that the evidence was too speculative and that a much stronger nexus between the third party's activities and the crime must be established.

Our court has recently addressed this type of situation in *People v. Jackson* (1976), 37 Ill. App. 3d 279, 345 N.E.2d 509. There, defendant was convicted for possession of cannabis and contended that the trial court had erred in refusing to allow the defense to present evidence that the lessee of the apartment in which the defendant was arrested had also been arrested the same day after a quantity of marijuana was found in his automobile. This court, however, held that any connection between the two offenses was mere speculation and therefore sustained the trial court's refusal to allow in the evidence.

■■ Applying the reasoning of *Dukett* and *Jackson* to the instant case, we find the evidence connecting Prentice Taylor to the breakins at the Corray residence to be purely speculative. We realize that there are many generalities that might connect Taylor with a crime of this nature but these connections lack the requisite specificity that is required by law so as to insure that extraneous and irrelevant matter is excluded from the jury.

By way of example, King points out that Prentice Taylor's physical characteristics (5'10" and 165 pounds) more closely proximate the physical description of the intruder as given by Ms. Corray (5'7" and 140 pounds) than do the characteristics of King (5'11" and 200 pounds). Although this argument may well cast doubt on the accuracy of the prosecutrix's physical description of the July 3 intruder (and defense counsel emphasized this point through the trial), it does not represent a close connection between Taylor and the crimes at the Corray residence.

King also points out that the police report would relate that Taylor had been seen in his home a short distance from the Corray residence in the early morning hours of July 3 and had been wearing a dark shirt over a white T-shirt. King argues that this would correspond to Ms. Corray's description of the intruder's clothes as being baggy with possibly another shirt under the prowler's sweatshirt. We do not find the fact that Taylor was awake and fully dressed at an early morning hour to be a sufficient link to the breakin at the Corray home to warrant the admission of the evidence. Nor do we find the connection between the fact that Taylor had a T-shirt on underneath a dark shirt and that the prowler may have had another shirt underneath his sweatshirt to be adequately probative to put the evidence before the jury.

Defense counsel also offered to show that Taylor had been convicted of indecent exposure and charged with deviate sexual assault and rape. Aside from obvious evidentiary problems associated with allowing into evidence the mere charges of deviate sexual assault and rape, we do not find that this evidence specifically connects Prentice Taylor to the particular breakin at the Corray home. If evidence could be introduced concerning a third party's prior sexual improprieties without a more specific connection to the particular crime involved, trials could go on *ad infinitum* and juries would become hopelessly confused with the morass of evidence presented to them. In short, the evidence connecting Prentice Taylor with the crimes in the case at bar was too generalized and nonspecific to this case. It was properly barred, entirely consistent with *Dukett* and *Jackson*.

But the real crux of the issue is defendant's contention that the evidence would connect Taylor to the crime by showing *modus operandi*. King alleges that testimony would have been introduced concerning Taylor's bizarre habit of defecating in public. It is contended that this evidence is especially relevant considering the fact that human excrement had been found at the scene of the June 12 breakin of the Corray residence and had also been present at an earlier attempt to break into that home.

Because of the potential abuse occasioned by the liberal application of the *modus operandi*, courts require that all the evidence must demonstrate that both crimes were " 'so nearly identical in method to earmark them as the handiwork of the accused' * * *." (*People v. Osborn* (1977), 53 Ill. App. 3d 312, 320, 368 N.E.2d 608, 615.) Here, defense counsel informed the court that Taylor was an exhibitionist who liked to entertain crowds by doing abnormal acts with a greased Coke bottle. The court inquired whether the offer of proof concerning Taylor involved evidence that the suspect had defecated at the scene of the crime where no other persons were present. Defense counsel answered that his offer of proof primarily concerned Prentice Taylor's exhibitionism.

We find that Taylor's exhibitionism contrasts sharply to the surreptitious conduct of the rapist-prowler at the Corray residence. In fact, they are contradictory concepts; one demands the spotlight, the other seeks the shadows. Had a closer and more specific connection between Taylor and the breakins at the Corray residence been reflected, we might be more prone to find Taylor's strange habits admissible. We also emphasize that defense counsel only offered evidence connecting Taylor to the July 3 breakin and not to any of the previous breakins at the Corray residence. There was no evidence of defecation at the July 3 breakin and thus Taylor's grotesque habits dim in their importance.

■■ In such a situation as thus, the trial court should be given great

deference. The trial judge has a wide scope of discretion in ruling on issues of relevancy and materiality and may reject evidence which he determines to be of little probative value because of its remoteness, uncertainty, or conjectural nature. (*People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14.) Since any connection between Prentice Taylor, Jr., and the present case was a matter of conjecture only, it cannot be said that the trial court abused its discretion in refusing to allow into evidence that another person had been investigated in connection with the breakins.

## II

King's second point on review concerns the trial court's failure to conduct a hearing as to the voluntariness of King's statements made to Officer Everett Krueger.

Reba Corray testified concerning the July 3 breakin that she could not see the intruder's face, but could see his jaw and chin. She stated that she did not see a beard on this man.

At trial, defendant called three witnesses—Joyce Ann King, Stella Wilson, and Lawrence Rhodes. Ms. King testified that her defendant-brother, Clarence, had had a beard since about age 11 and that she had never seen him without a beard. Ms. Wilson testified that she had known Clarence King ever since he was a small boy and that Clarence had had a beard since high school. Mr. Rhodes stated he was King's barber and that defendant had had a beard since he was in the 9th grade and wore a beard during the previous year.

In rebuttal, the State called policeman Everett Krueger to testify. Defense counsel objected to the testimony contending that such testimony had been the subject of a motion to suppress earlier in the proceedings and that the State had made a representation that they would not use statements made by defendant while in custody for other crimes. The trial court, without a hearing, denied defendant's motion to suppress and decided that the evidence was proper rebuttal testimony. Krueger then testified that he had asked King how long he had had his beard and the defendant had stated that he had not shaved since September.

In surrebuttal to Officer Krueger's testimony, the defense recalled witness Ronald Wade, who testified that the defendant had had a full beard in May and June of 1976. The defense then recalled witness Florese Rhodes who testified that the defendant had had a full beard in June and July of 1976. The defense also recalled witness Ethel Thomas, who testified that the defendant had had a full beard in May and June of 1976.

There is no question that the nature of the testimony given by Officer Krueger is proper rebuttal testimony. Rebuttal evidence is that which answers, explains, repels, contradicts, or disposes of new affirmative

matters raised by the defendant during the presentation of his case in chief. (*People v. Thornton* (1977), 54 Ill. App. 3d 202, 369 N.E.2d 358.) Admission of rebuttal testimony is a matter left to the discretion of the trial court and its exercise thereof will not be interfered with by a court of review unless an abuse of discretion is shown. *People v. Gentry* (1974), 19 Ill. App. 3d 861, 312 N.E.2d 441.

King's only contention on review is that the trial court erred in failing to conduct a hearing on his motion to suppress his in custody statement as not being voluntary. The People contend that the trial court did not err in failing to conduct a hearing on defendant's motion to suppress since King's statement that he had not shaved since September was not an admission and was used only to rebut the testimony of defendant's witnesses.

The State is incorrect in its argument. Illinois courts do not differentiate between statements, admissions, and confessions when speaking of the need for a hearing to determine the voluntariness of a defendant's statement and have stated that "the voluntary character of any out-of-court statement must first be established before the statement may be used, even for impeachment purposes." *People v. Lefler* (1967), 38 Ill. 2d 216, 220, 230 N.E.2d 827, 829; see also *People v. Hiller* (1954), 2 Ill. 2d 323, 118 N.E.2d 11; *People v. Fox* (1970), 131 Ill. App. 2d 604, 264 N.E.2d 502.

In *People v. King* (1974), 22 Ill. App. 3d 66, 316 N.E.2d 642, *modified* (1975), 61 Ill. 2d 326, 335 N.E.2d 417, the defendant was being tried for charges stemming from a shooting incident and testified at trial that he had shot the victim in self-defense. The State attempted to impeach the defendant's testimony with his earlier statement that he did not have a gun. Defendant objected and argued that the prior statement had been taken while he was under sedation and therefore it was not voluntary. The trial court overruled the defendant's objection and stated that since a confession was not involved, the court did not have to find that the statement was voluntary before admitting it into evidence. Our court reversed and decided that a hearing should have been held to determine whether the statement was voluntary. We examined the history of Illinois law in this area and concluded:

> "We hold likewise that when the voluntary nature of an out-of-court statement is put into question, no distinction should be drawn between inculpatory and exculpatory statements. The court must, out of the presence of the jury, make a finding on this matter." *King*, 22 Ill. App. 3d 66, 71, 316 N.E.2d 642, 646.

So, if questions are raised concerning the voluntariness of a defendant's statements, a hearing must be held by the trial court. Thus, the trial court should have conducted a hearing on King's motion to suppress.

■■ However, although the trial court erred in failing to conduct a hearing, we find that such error can be discounted as harmless. A defendant is entitled to a fair trial, not a perfect one, and judgment ought not to be reversed merely because error has been committed, unless it appears that real justice has been denied thereby or that the verdict of the jury may have resulted from the error. (*People v. Wright* (1974), 56 Ill. 2d 523, 309 N.E.2d 537.) Here the effect of Officer Krueger's testimony is mitigated by the testimony of several defense witnesses directly contradicting the import of the police officer's statements.

We further believe that Krueger's testimony was not an essential ingredient of the prosecution. The State's case largely pivoted on defendant's prints. His palmprint and fingerprint were found on the inside of a window frame and on a screen which had been in the window on June 12—the day of the first breakin. Defendant's fingerprint was also found on a pane of glass which had been in a window on July 3—the day of the second breakin. This is very strong circumstantial evidence of defendant's guilt. A *fortiori*, any error in the court's failure to conduct an inquiry into voluntariness can be labeled harmless.

Affirmed.

CRAVEN and TRAPP, JJ., concur.