*In re* ROY GUTTIERREZ, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* ROY GUTTIERREZ, Respondent-Appellant.)

First District (1st Division)    No. 78-846

Opinion filed April 16, 1979.

Ralph Ruebner, of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, James S. Veldman, and Kathleen M. McGury, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

Respondent appeals from a judgment of the circuit court of Cook County which revoked his probation and committed him to the Department of Corrections, Juvenile Division. On appeal, respondent

contends (1) he was improperly denied a hearing on his motion to suppress statements, (2) the court erred in admitting and relying upon a hearsay statement that respondent had told police his brother had committed the offense, and (3) the court erred in admitting a hearsay police radio dispatch containing a description of the alleged offender as a Mexican.

We reverse and remand.

On October 21, 1976, respondent was found delinquent for having committed the offense of unlawful use of weapons (Ill. Rev. Stat. 1975, ch. 38, par. 24—1(a)(4)) and placed on 10 months probation. One month later, a supplemental petition to revoke probation was filed, alleging he committed the offense of armed robbery of Frank Sadus. (Ill. Rev. Stat. 1975, ch. 38, par. 18—2.) Two attempts by respondent to conduct a hearing to suppress statements were rejected by the trial court prior to the revocation hearing.

At the revocation hearing Frank Sadus testified that at approximately 6:20 p.m., on November 20, 1976, he was at his suburban home with his wife, Josephine. When his wife answered the doorbell, a man wearing a black mask and a long trench coat pushed his way inside, poked his wife with a gun he was holding and said, "This is a stickup." He did not recall what type of shoes the intruder was wearing. When the intruder demanded money, his wife gave him $20 from the dresser and then looked for more money before leaving. On cross-examination, he testified the man was 5 feet tall and that he had told Officer Peligreno the assailant had blond hair coming out from under the mask.

Josephine Sadus testified the assailant was wearing "a black ski mask with red" and a trench coat which was open, revealing a white shirt. She did not know if he had blond hair, but she said "There was something that looked like blonde," although it might have been the lining from the cap. She could not identify the assailant.

Chicago Heights Police Detective Manuel Martinez testified that on November 20, 1976, he was on patrol when he received a radio dispatch of the armed robbery and home invasion. The broadcast described the assailant as a male white, Mexican, 5 feet 5 inches in height, wearing a dark trench coat and ski mask. The witness proceeded in response to the call and observed a man running toward the alley crossing the railroad tracks; he then saw him leaning into a garbage can as if he were putting something inside. The officer pursued the subject, and recognized him as respondent. He returned to the garbage can where he found a dark trench coat and red-white-and-blue gym shoes, which were subsequently admitted into evidence over objection. On November 22, 1976, Detective Kuester informed this witness respondent was in custody at the police

station. When asked if respondent was apprised of his constitutional rights at that time, Officer Martinez testified without objection that Detective Kuester claimed that respondent had been. Martinez identified respondent as the person fleeing in the alley and Detective Kuester then advised him respondent had made a statement, "That it was his brother." Counsel objected on the grounds of hearsay, and the court sustained the objection. But the court continued: "He is aware that the rights were given. He so testified. It is in the record. Is that correct, officer?" Officer Martinez then responded affirmatively.

On cross-examination, Officer Martinez testified that when he arrived at the station both respondent and respondent's brother, Raul, were in custody. He denied the respondent was told to give a statement. He did not know if the coat or shoes fit respondent.

Respondent testified he was 16 years of age, and he denied committing the armed robbery. He claimed that, when he was first asked where he was at 6:20 p.m. on November 20, 1976, he responded he was at Michael Mackin's house. He explained he had been there from about 3 p.m. until 5:45 p.m. At about 6 p.m. Michael picked him up, took him to a dance at the Ford plant and dropped him off. He stayed at the dance and got a ride home about 2 hours later. He denied that Officer Martinez had seen him in the alley or that he put the coat and shoes in the garbage can. Respondent stated that Officer Peligreno arrested him, took him to the police station and questioned him. Respondent told him where he was on November 20. Three detectives then took him in a room and started questioning him. Two detectives remarked that they could not communicate with him and said perhaps they should get "a Mexican cop" to assist them. Respondent complained that that was not necessary because he could speak English. The officer said they would get him anyway and brought in Officer Martinez, who identified him. Respondent then continued to deny any involvement until Officer Martinez slapped him across the face, hit him in the eye and leg, and threatened him with physical harm. The police then brought both respondent and his brother into the same room and told him to tell them his brother did it. Respondent testified that one officer told him that if he had done the armed robbery to plead guilty because he was on probation and did not have any choice. Both respondent and his brother were threatened by an officer with a club. The police later took his brother to one room, left him in the room and started hitting on him. Respondent testified that none of the officers told him he had a right not to give any statement or to have a lawyer present, or if he were not able to pay for one that they would provide one for him. According to respondent his brother was not in court to verify his account because he was in military service. On cross-

examination, he testified that at no time did he tell the officers that it was his brother that committed the crime. He recalled that when he asked for a lawyer, the police started laughing. Thus respondent did not tell the officers anything but remained silent.

Michael Mackin confirmed that respondent was at his house until about 5:45 p.m., when he went home to change clothes. He picked respondent up at 6 p.m. and took him to a dance at the Ford plant.

Officer Martinez testified in rebuttal that a supplemental report written by Detective Kuester indicated respondent made an accusation involving his brother, Raul. At the conclusion of his testimony, respondent objected to this testimony as hearsay, but the court overruled the objection, since the officer had testified without objection on direct examination that there was an exculpatory statement by the minor that his brother was the one who did it.

■■ ■ Respondent first contends the trial court erred in not holding a hearing on his motion to suppress statements he allegedly had made. The State argues that respondent's statement was exculpatory rather than inculpatory. However, whether exculpatory or inculpatory, the statement should not have been admitted until it was found to be voluntary. (*People v. King* (1974), 22 Ill. App. 3d 66, 71, 316 N.E.2d 642.) Subsequent to the filing of the briefs, our supreme court held in *People v. Peterson* (1978), 74 Ill. 2d 478, 384 N.E.2d 348, that the involuntary confession of an accused probation violator is inadmissible in a proceeding to revoke probation. The written motion to suppress filed in this case makes it clear that respondent was contending not only that the alleged statement was made in violation of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, but that it was not voluntarily made. Under *Peterson*, respondent was entitled to a hearing on the voluntariness of his alleged admission and the cause must be remanded for this purpose.

The State also contends respondent was not prejudiced by admission of the statement. The remarks of the trial court demonstrate that it relied on the purported statement of respondent in concluding there was a violation of probation. Apart from his alleged statement, the only evidence against respondent was Officer Martinez' testimony that he had seen him deposit a coat and a pair of sneakers in a trash can and run away. The record does not establish the time of this confrontation or the distance between where it occurred and where the crime was committed. Neither victim remembered the type of footwear worn by the intruder and neither identified the coat. According to the victims, the intruder had blond hair and was 5 feet tall, but the radio dispatch allegedly described the intruder as a Mexican, who was 5 feet 5 inches in height. The evidence was not so satisfactory as to result in a finding that respondent was not

prejudiced by the substantive consideration of the statement he purportedly made to police.

There are other evidentiary errors which respondent claims denied him a fair revocation hearing. In view of the quantitative evidence produced we believe these matters hereinafter discussed were improperly weighed by the trial court in reaching its decision. We do not agree with the State's contention that defendant has waived these points. See *In re Driver* (1977), 46 Ill. App. 3d 574, 576, 360 N.E.2d 1202; *People v. Beasley* (1977), 54 Ill. App. 3d 109, 115-17, 369 N.E.2d 260.

■■ Respondent contends the admission of his alleged statement over defense objection was error because it was based on hearsay testimony of Officer Martinez as to what Officer Kuester told him. The record clearly shows that the trial court considered this evidence. This evidence was clearly hearsay and offered to prove both that respondent made the statement and the verity of its contents. This testimony should have been excluded. *People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738.

■■ Finally, respondent contends the contents of the police radio dispatch referring to the assailant as a Mexican who was 5 feet 5 inches in height should not have been admitted. In summarizing the evidence the trial court said this description matched respondent, thereby indicating the court's substantive reliance on the matter. This is not a case where a radio communication is admitted to prove only that a communication has been made and that the officers had probable cause to arrest. (*People v. Williams* (1978), 62 Ill. App. 3d 966, 974, 379 N.E.2d 1268.) Rather, the evidence was offered to show the assailant was in fact a Mexican. This constitutes prejudicial error and the evidence should not be considered in such manner upon retrial.

For the foregoing reasons, we reverse the judgment of the circuit court of Cook County and remand the cause for further proceedings consistent with this opinion.

Judgment reversed; cause remanded.

O'CONNOR and CAMPBELL, JJ., concur.