THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HERBERT HARRIS, Defendant-Appellant.

Fourth District   No. 4—87—0156

Opinion filed November 12, 1987.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Defendant Herbert Harris was convicted by jury trial in the circuit court of McLean County of attempt (murder) and burglary pursu-

ant to sections 8—4 and 19—1 of the Criminal Code of 1961 (Code) (Ill. Rev. Stat. 1985, ch. 38, pars. 8—4, 19—1). On March 2, 1987, defendant was sentenced to eight years' imprisonment on the attempt (murder) and four years' imprisonment on the burglary.

Defendant appeals from the convictions, contending (1) the trial court erroneously failed to suppress a statement given after the arrest; (2) he was not proved guilty beyond a reasonable doubt; and (3) the trial court erroneously allowed a police officer to testify, in violation of the hearsay rules, that on the night of the incident he heard no other radio transmissions regarding shooting incidents other than the one being considered by the trial court.

On the night of July 9, 1986, Charles Fisher, an employee of a Kentucky Fried Chicken store in Bloomington, closed the store at about midnight, taking the receipts which were to be deposited, and entered his van. Upon entering the van, someone grabbed him and threatened to kill him. Fisher reached for the gun, shots were fired, and two unidentified people exited the van. Fisher was not injured, but blood covered the passenger seat and was located on the glass and interior passenger door. Three fired casings, as well as one bullet and one unfired round, were found in the van. Footprints were found in the van as well as in the mud near a trail of blood that was traced from the van.

Evidence indicated that the defendant had picked up David Howard in Bloomington sometime between 11 and 11:30 p.m. At approximately 12:17 a.m. on July 10, David Howard was found lying next to a phone booth in the 100 block of East Wood Street in Bloomington covered with blood and suffering from three or four gunshot wounds. There was no evidence of a struggle in the area of the phone booth.

There was testimony that defendant had been an employee of the Kentucky Fried Chicken store from April 1985 to May 30, 1986, and upon being fired by the manager, Russell Hayden, had told Hayden he would get what was coming to him.

Around 3:30 a.m. on July 10, the defendant was treated at St. Francis Hospital in Peoria, Illinois, for an injury to his left thumb. The defendant told the treating physician that the injury was caused by gunshot or from a firecracker. The physician was of the opinion the injury was caused by gunshot and could not have been caused by a firecracker. According to the physician, the injury would have bled immediately.

Defendant's automobile was found in Bloomington and searched within a couple of days of the crime, while the defendant was still in

the Peoria hospital. It appeared that the seats, the dash, and the center console had recently been wiped off with something wet. Some blood samples were found. The blood type in the Fisher van was the same as defendant's, but was different from Howard's or Fisher's. The blood type on a towel found near the crime was the same as defendant's. The blood type in defendant's automobile was consistent with a mixture of defendant's and Howard's blood. Defendant's shoes, taken from the Peoria hospital, appeared to have blood on them.

Footprints found in the back of the van and on the trail away from the crime were consistent with Howard's shoes.

A multicount information was filed on July 11, 1986, with a warrant issuing the same date for defendant. The warrant was served the same day on the defendant at the Peoria hospital. Defendant was transferred to a Bloomington hospital, and upon release therefrom on July 15, 1986, he was transported to the McLean County jail. Later that day, before there was court appearance, Officer Jeff Sanders interviewed defendant. The interview was initiated by Sanders. He first advised defendant of his *Miranda* rights by reading a preprinted card. The admonishment included the fact that defendant had a right to talk to a lawyer and have him present during questioning. Defendant was also advised that if he could not afford a lawyer one would be appointed to represent him. The defendant gave an affirmative response when Sanders asked if he wished to speak.

Sanders stated that after the *Miranda* warnings, he confronted defendant with some of the evidence gathered during the investigation. Defendant responded by denying any knowledge of the case. Sanders then confronted defendant with further evidence, to which defendant responded with an oral statement denying participation in the incident and stating that he left Bloomington for Peoria at approximately 9 p.m. on the night of the incident. After further interrogation, wherein Sanders stated that witnesses saw defendant in Bloomington at 11:30 p.m., defendant gave a written statement similarly denying involvement and stating he did not have a watch and that he could have left Bloomington around 11:30 p.m. that night. The State's Attorney, during trial, referred to the oral and written statements of defendant as a "manufactured alibi."

■■ The defendant moved to suppress the statements given Sanders, contending a violation of his sixth amendment right to counsel, arguing that the right to counsel cannot be waived, even when *Miranda* rights are given, after an information has been filed with a warrant having been served. It is pointed out that our court determined the right to counsel exists in such cases. (See *People v. Dove*

(1986), 147 Ill. App. 3d 659, 498 N.E.2d 279.) Defendant also contends our supreme court's decision in *People v. Owens* (1984), 102 Ill. 2d 88, 464 N.E.2d 261, *cert. denied* (1984), 469 U.S. 963, 83 L. Ed. 2d 297, 105 S. Ct. 362, was overruled by a combination of *Maine v. Moulton* (1985), 474 U.S. 159, 88 L. Ed. 2d 481, 106 S. Ct. 477, and *Michigan v. Jackson* (1986), 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404. Careful analysis of both of these cases does not indicate such a result. *Jackson* stands for the proposition that once a defendant requests counsel at arraignment, subsequent interrogations gathered before his being able to consult with counsel are inadmissible. This is consistent with the decision in *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, which involved the fifth amendment right providing once a defendant requests counsel, the State cannot initiate interrogation with the defendant, and any waiver received after such a contact is invalid.

The facts in *Moulton* are not similar to the present case. In that case, defendant was on bond and had counsel. A codefendant, cooperating with police, wore a body-wire device to obtain incriminating statements from the defendant.

We hold that the decision in *Owens* is controlling, and the trial court was correct in allowing the testimony involving defendant's July 15 statements. We agree with and adopt the position set forth by the appellate court in *People v. Tackett* (1986), 150 Ill. App. 3d 406, 501 N.E.2d 891.

■■ ■ Defendant next argues he was not proved guilty beyond a reasonable doubt, and the conviction must be reversed.

We agree that the State's case is built on circumstantial evidence. It is well settled that the commission of an offense may be established entirely by circumstantial evidence. (*People v. Marino* (1970), 44 Ill. 2d 562, 580, 256 N.E.2d 770, 780.) A jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances relied upon to establish guilt, but it is sufficient if all the evidence, taken together, satisfies the jury beyond a reasonable doubt of the accused's guilt. (*People v. Williams* (1977), 66 Ill. 2d 478, 485, 363 N.E.2d 801, 804.) Proof of guilt beyond a reasonable doubt does not require proof beyond any possibility of a doubt. *People v. Branion* (1970), 47 Ill. 2d 70, 77, 265 N.E.2d 1, 5, *cert. denied* (1971), 403 U.S. 907, 29 L. Ed. 2d 683, 91 S. Ct. 2213.

■ When confronted with circumstantial evidence, the jury need not seek out a series of potential explanations compatible with innocence and raise them to the status of reasonable doubt. (*People v. Benedik* (1974), 56 Ill. 2d 306, 309, 307 N.E.2d 382, 384.) A defend-

ant's conviction will not be reversed on appeal unless the evidence is so improbable as to raise a reasonable doubt of defendant's guilt. *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276; *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.

Our supreme court stated in *Collins*:

> "When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. As the United States Supreme Court observed in *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' The court went on to note that, '[o]nce a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.' (Emphasis in original.) 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789." (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.)

See also *People v. Sanchez* (1986), 115 Ill. 2d 238, 261, 503 N.E.2d 277, 284, *cert. denied* (1987), 483 U.S. ___, 97 L. Ed. 2d 745, 107 S. Ct. 3240.

■ The evidence established a shooting in the van near midnight, with a possible conclusion of two to four shots being fired. At least one of the perpetrators had to have been wounded. There were two wrongdoers. The defendant picked up Howard within an hour before the crime. Howard's shoeprint was consistent with prints found in the van. Howard was found injured by gunshots next to a phone booth a few minutes after the crime. At around 3:30 a.m., defendant was hospitalized in a Peoria hospital because of a gunshot wound. Blood in the van matched defendant's blood type. Defendant had been fired from the Kentucky Fried Chicken store on May 30, 1986, 40 days before the crime, and at the time of firing had threatened the manager. Parts of defendant's automobile appeared to have been cleaned up, but traces of blood, which could have been a combination of defendant's and Howard's, were found in the automobile. Howard's blood type was found on the passenger door of defendant's automobile. The evidence was sufficient to sustain the jury's verdict.

■ Defendant's final contention results from the testimony of Bloomington police officer Tony Becker. Becker was on duty from 11

p.m. on July 9 to 7 a.m. on July 10 and responded to a report that resulted in his finding the injured Howard. Becker testified that he heard all radio transmissions from the Bloomington police department during his work shift, that it was the practice to transmit by radio all reports of shootings, and that on the July 9 to 10 shift, the only transmission relating to shootings was the reference to the Kentucky Fried Chicken store incident.

Defendant asserts this testimony is inadmissible hearsay, and its admission has denied him a fair trial. He states that evidence of radio transmissions presents a classic case of inadmissible hearsay under Illinois law and cites *In re Guttierrez* (1979), 71 Ill. App. 3d 537, 390 N.E.2d 25, and *People v. Laurry* (1972), 5 Ill. App. 3d 713, 283 N.E.2d 895. He asserts the State is using the absence of radio transmissions in the same manner as the receipt of radio transmission, and, thus, the hearsay exclusion should apply. During opening statement and closing argument, the State made use of the fact that no other shooting was reported.

The State argues that the statement was not hearsay, and, if hearsay, was harmless error. We recognize the purpose of the testimony was to imply that there was no other shooting in the community during the time span Howard was wounded, so, he most likely or must have been involved in the Kentucky Fried Chicken store crime.

The Becker statement was an attempt to prove a negative, that there were no shootings, other than the Kentucky Fried Chicken incident, in Bloomington the night of July 9.

Hearsay is testimony of an out-of-court statement offered to prove the truth of the matter asserted therein and resting for its value on the creditability of the out-of-court asserter. (*People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223.) The State contends no out-of-court statement was being offered and suggests the officer was not testifying as to the truth of the matter asserted by there being no report, but only as to the nonexistence of there being a statement. We realize the presence of that gray area which has caused confusion as to what is hearsay and what exception to the hearsay rule should exist. There can be no doubt but that the purpose of the Becker statement was to indicate to the jury the absence of other shootings in Bloomington. This purpose goes beyond merely showing whether or not a transmission was made or not made. Becker could not have testified that a shooting had taken place at "x" place, based on what he heard from the radio, the repeating of a transmission clearly being hearsay. However, if Becker was establishing his justification for going to "x" place, he could testify as to the transmission because his

statement of fact related to the existence of the transmission, not the existence of the shooting. Becker's testimony in the present case was to establish the fact of no shootings, in other words, proving a negative. Proving the negative, as in proving the positive, is subject to the hearsay rules. The statement was hearsay. The proper method of proof would be eliciting the fact of no reports of shootings from those who record the reports.

■ While determining the hearsay nature of the testimony, we recognize that under the facts in this case evidence of the lack of any other reports of shootings in Bloomington would be probative evidence. The evidence would be circumstantial and involve the elements of probability, but would be, in this case, relevant.

In determining whether the error affected substantial rights (see 107 Ill. 2d R. 615), we have considered the tests set forth in *People v. Wilkerson* (1981), 87 Ill. 2d 151, 429 N.E.2d 526, *People v. Warmack* (1980), 83 Ill. 2d 112, 413 N.E.2d 1254, *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238, and *People v. Black* (1972), 52 Ill. 2d 544, 288 N.E.2d 376, *cert. denied* (1973), 411 U.S. 967, 36 L. Ed. 2d 689, 93 S. Ct. 2155. There are references to the lack of other shootings in the State's opening statement and in closing argument. The testimony at trial resulted in cross-examination as to Officer Becker's ability to remember transmissions. There is no suggestion that other shootings took place or had been reported. The nature of the objections to Becker's testimony was not specified by defense counsel, and the judge's ruling referred to foundation, not hearsay. There was no mention of "hearsay" in the few pages referring to the radio transmissions.

The reference to this issue in the post-trial motion only provided as follows:

> "The Court erred in admitting the following offered by the State over objections of the Defendant:
>
> * * *
>
> (b) Officer Tony Becker's testimony that no other reports of a shooting were transmitted on his police radio unit on the night of July 9, 1986, and the early morning hours of July 10, 1986."

The defendant did not make oral argument about this issue during the hearing on the post-trial motion. The issue of hearsay was specifically argued for the first time on appeal.

In considering the testimony and the ready availability of records refuting or substantiating whether other shootings had been reported, we recognize the absence of an actual dispute over the accuracy of

the evidence. The ability to verify whether other shootings were reported would be reason for Becker to avoid any falsehood in his testimony. While the constitutional right of confrontation is involved, we do not equate that right with those constitutional rights that are so basic to fair trial that infractions cannot be harmless. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

With the absence of a dispute as to the accuracy of the fact established by the Becker testimony, we come to the conclusion that the violation of the hearsay evidence rule must be considered harmless error. (See McCormick, Evidence §243, at 578 (2d ed. 1972) (for similar authorities relating to secondary evidence in the nature of copies).) The hearsay error is harmless beyond a reasonable doubt.

The judgment of the circuit court of McLean County is affirmed.

Affirmed.

SPITZ, P.J., and GREEN, J., concur.