THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIE MASON, Defendant-Appellant.

First District (3rd Division)   No. 1—91—3933

Opinion filed November 16, 1994.

Joan Hill-McClain, of Oak Park, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Linda Dale

Woloshin, and Gerald E. Nora, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Following a bench trial, defendant, Willie Mason, was convicted of possession of a controlled substance with intent to deliver (Ill. Rev. Stat. 1989, ch. 56$^1$/$_2$, par. 1401(a)(2)) and sentenced to 18 years in the Illinois Department of Corrections. We affirm.

The issues for review by this court are (1) whether the trial court erred in denying defendant's motion to quash the arrest and suppress evidence obtained therefrom, on the basis that the police did not obtain proper consent or authorization to search the premises; (2) whether defense counsel coerced defendant into testifying at trial; and (3) whether defendant received ineffective assistance of counsel when he was advised to testify and when defense counsel allegedly failed to present certain exculpatory evidence.

On November 24, 1989, Chicago police officers Jambrosek and Lucas responded to a call regarding alleged drug-related activity in a storefront property located at 5948 West North Avenue in Chicago, Illinois (the premises). There, they met Clarence Owens, who identified himself as the lessee of the premises. Owens escorted the police officers inside the premises and showed them narcotics paraphernalia which he found lying on a table in a back room. Owens then gave the police officers keys to the premises and executed a consent form authorizing the police to search the premises.

Officers Jambrosek and Lucas gave the keys and the search consent form to their district tactical team. Three tactical police officers, Pena, Flashing and Cane, then placed the premises under surveillance. At 6:10 p.m. on November 24, 1989, defendant went to the rear door of the premises with Tommy Wright (a/k/a Lovelle Washington). Defendant unlocked the door and entered the store with Wright. Officers Pena, Flashing and Cane, who were observing the premises, then requested backup from uniformed police officers. Officers Jambrosek and Lucas responded by driving their marked squad car to the rear of the premises to guard the rear entrance while Officers Pena, Flashing and Cane moved to the front door for which they had keys. As Officers Flashing and Cane unlocked the padlocks, Officer Pena looked through the front window whereupon he saw people moving in a rear room. The people paused, looked in Officer Pena's direction, and then ran towards the back of the store. The suspects attempted to leave through the back door but turned around when they saw Officers Jambrosek and Lucas. Defendant and Wright then ran back in the store and into a side room. Officers

Pena, Flashing and Cane then entered the store and found defendant and Wright in the side room. Wright was just standing in the room, but defendant was standing on a shelving unit throwing packets of cocaine through a hole into a false ceiling. Chicago fire department personnel assisted the police officers in retrieving 144 packets of cocaine, weighing 120.6 grams, from the ceiling. The police also recovered sifters, scales and grinders. Defendant and Wright were arrested. After Wright was arrested, he admitted to Officer Pena: "The stuff is mine. It's my dope." Officer Pena later testified regarding that statement at a preliminary hearing, but did not testify about the statement during the trial.

On May 1, 1990, defendant filed a motion to quash his arrest and suppress evidence gleaned therefrom. Hearings on that motion were held in July and August of 1990. Defense counsel introduced evidence that the alleged lessee, Owens, had the keys to the premises but did not have a leasehold until December 1, 1990. On August 17, 1990, the trial court denied defendant's motion and the case proceeded to trial.

At trial, the landlord, Robert A. "Tony" Bryant, testified that he asked defendant to go to the subject premises to persuade a holdover tenant, Lisa Jones, to leave the premises. Jones testified that she did not know defendant and that the drugs on the premises belonged to her boyfriend, Lee Burrell. Jones further testified that she did not know Wright, but that she was friends with Wright's girl friend.

Defendant also testified in his own behalf. Defendant told the court that he went to the premises at the request of the landlord to persuade Jones to leave. Defendant maintained that when he arrived, he found Wright and he joined Wright inside. Defendant further testified that approximately five minutes later, he saw the police arrive. Defendant told the court that he panicked upon being seen by the police because drugs were lying around and he tried to hide them in the false ceiling. The trial court found defendant guilty of possession of a controlled substance with intent to deliver.

Defendant filed a motion for a new trial, alleging that defense counsel forced him to testify and denied him effective assistance of counsel by compelling him to testify and failing to present certain exculpatory evidence. Defendant alleged in an affidavit that he knew nothing about the drugs and that he did not want to testify but that he did so because his attorney told him that he had to testify. Defense counsel admitted that he told defendant that defendant's denials were inconsistent with the evidence. Hearings on that motion were held in June and October of 1991. On October 9, 1991, the trial court denied defendant's motion for a new trial, finding that regardless of

the effectiveness of counsel, the outcome of the trial could not have been different had defendant not testified. The court sentenced defendant to 18 years in the Illinois Department of Corrections. Defendant now appeals.

On appeal, defendant contends that the trial court erred in denying his motion to quash arrest and suppress evidence because Owens, the person who gave the police the keys to the premises and executed a search consent form, did not have the authority to do so because he was not the lessee of the premises. The State argues that defendant did not have standing to raise this issue because he had no expectation of privacy in the premises as he was not the lessee. In the alternative, the State maintains that the police search of the premises was proper because the police received the consent of a party who reasonably appeared to have authority over the premises.

■ The capacity to invoke the protection of the fourth amendment depends upon whether the party seeking said protection has a legitimate expectation of privacy in the invaded place. (*Minnesota v. Olson* (1990), 495 U.S. 91, 95, 109 L. Ed. 2d 85, 92, 110 S. Ct. 1684, 1687.) An expectation of privacy is legitimate if it is one which society is prepared to recognize as reasonable. (*Olson*, 495 U.S. at 95-96, 109 L. Ed. 2d at 92, 110 S. Ct. at 1687.) The record indicates that there was no direct relationship between the lessee and defendant and that defendant had no legal or proprietary interest in the premises. (See *Olson*, 495 U.S. at 97-99, 109 L. Ed. 2d at 94-95, 110 S. Ct. at 1688-89.) There is no evidence to suggest that defendant had been there for more than a brief period of time or to suggest that he planned to stay for more than a brief period of time. Furthermore, there is no evidence that defendant was a "guest" at the time, in the sense that he was invited to the premises by Jones. Where there is no indication that a defendant was "anything more than transitorily on the premises," as in the present case, the defendant has no standing to object to a search of the premises. (*People v. Bass* (1991), 220 Ill. App. 3d 230, 243, 580 N.E.2d 1274, 1283.) Accordingly, the trial court properly denied defendant's motion since defendant had no standing to challenge the propriety of the search and seizure of the premises.

■ Even if defendant did have a legitimate expectation of privacy in the premises, he would not succeed in his effort to persuade us to reverse the trial court's ruling on his motion to quash arrest and suppress evidence because the search and seizure in question were proper. A warrantless entry and search by law enforcement officers is valid even if the consenting party does not actually possess authority to consent so long as the police officers involved reasonably believe under the circumstances that the third party possesses such

authority. (*Illinois v. Rodriguez* (1990), 497 U.S. 177, 186, 111 L. Ed. 2d 148, 160, 110 S. Ct. 2793, 2800.) Whether a warrantless entry is valid when based upon the consent of a third party must be judged against the following objective standard: Would the facts available to the officer at the moment warrant a man of reasonable caution to believe that the consenting party had authority over the premises? (*Rodriguez*, 497 U.S. at 188, 111 L. Ed. 2d at 161, 110 S. Ct. at 2801.) "Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must *** apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably." (*Rodriguez*, 497 U.S. at 186, 111 L. Ed. 2d at 160, 110 S. Ct. at 2800.) Many situations which confront police officers in the course of their duties are ambiguous and room must be allowed for some mistakes on their part. Any mistakes, however, must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. (*Brinegar v. United States* (1949), 338 U.S. 160, 176, 93 L. Ed. 1879, 1891, 69 S. Ct. 1302, 1311.) This general rule applies to cases with issues bearing upon the authority of a third party to consent to a search. *Rodriguez*, 497 U.S. at 186, 111 L. Ed. 2d at 159-60, 110 S. Ct. at 2800.

■ When challenging a motion to suppress evidence, the burden of proof is on the defendant to establish that the search was unreasonable. (*People v. Bliey* (1992), 232 Ill. App. 3d 606, 615, 597 N.E.2d 830, 837; *People v. Brown* (1987), 162 Ill. App. 3d 528, 540, 515 N.E.2d 1285, 1292.) Defendant has failed to meet his burden of proof as the record indicates that the police reasonably believed that Owens had the authority to consent to the search of the premises. The fact scenario confronting the police officers would warrant men of reasonable caution to believe that Owens, the consenting party, had authority over the premises. During a hearing on a motion to quash arrest and suppress evidence, it is the function of the trial court to weigh the evidence and to determine the witness' credibility (*People v. Redd* (1990), 135 Ill. 2d 252, 268, 553 N.E.2d 316, 322), and this court must defer to the trial court's factual findings and decisions about the witness' credibility on review. (*People v. Pertz* (1993), 242 Ill. App. 3d 864, 894, 610 N.E.2d 1321, 1340.) In the present case, the trial court heard the testimony of several witnesses and found the State's witnesses to be credible. A trial court's ruling on a motion to quash and suppress will not be overturned unless the ruling is manifestly erroneous. (*People v. Foskey* (1990), 136 Ill. 2d 66, 76, 554 N.E.2d 192, 197; *Redd*, 135 Ill. 2d at 268, 553 N.E.2d at 322; *People v. Stuckey* (1992), 231 Ill. App. 3d 550, 560.) Here, the trial court's ruling on defendant's motion was not manifestly erroneous. Accordingly,

the trial court's ruling on defendant's motion to quash arrest and suppress evidence is affirmed.

■ We will now turn our attention to the question of whether defendant was coerced into testifying at trial in violation of his fifth amendment privilege against self-incrimination. There is no evidence of coercion of defendant by defense counsel in the record. Although defense counsel told defendant that it was in his best interest to testify, he did not infringe upon defendant's fifth amendment privilege in so doing. The Illinois Supreme Court has stated that "[al]though counsel should not demand that his own view of the desirable course be followed, he is free to engage in fair persuasion and to urge his considered professional opinion on his client." *People v. Brown* (1973), 54 Ill. 2d 21, 24, 294 N.E.2d 285, 287.

Finally, defendant contends that he received ineffective assistance of counsel when he was advised by defense counsel to testify and when defense counsel failed to present certain allegedly exculpatory evidence to the trial court. The State maintains that defendant's latter argument that he received ineffective assistance of counsel when defense counsel failed to present exculpatory evidence to the court was waived, as said argument was not included in defendant's motion for a new trial.

■ Although defendant has failed to properly preserve the latter issue for appellate review (see *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130), we will review this question pursuant to Illinois Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)), which provides that this court, in the exercise of its responsibility to insure that a cause has a just result, may ignore the doctrine of waiver and decide a case on grounds not properly raised by the parties. See *People v. Shelton* (1993), 252 Ill. App. 3d 193, 200, 624 N.E.2d 1205, 1210.

■ The standard of quality for an attorney's advocacy is that of reasonably effective assistance pursuant to prevailing professional norms. (*Strickland v. Washington* (1984), 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693-94, 104 S. Ct. 2052, 2064-65.) In order for a defendant to prove that he received assistance from his attorney that was so ineffective as to merit the reversal of his conviction, the defendant must show that his counsel made errors so grave and that his performance was so deficient that he did not function in a manner commensurate with the sixth amendment standard for advocacy, and that these deficiencies so prejudiced defendant as to deprive him of a fair trial with a reliable result. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) In order for a defendant to establish that his counsel was deficient, the defendant must overcome the strong presumption that counsel's complained-of action or inaction

was the result of his trial strategy. (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.) Even if a defendant establishes that his attorney's performance was deficient, he must still demonstrate that he was prejudiced by defense counsel's error (*Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65) and that there was a reasonable probability that absent said error, the fact finder would have had a reasonable doubt concerning his guilt. *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69.

■ In the present case, defendant did not receive ineffective assistance of counsel. With respect to defendant's allegation that defense counsel rendered ineffective assistance when he advised defendant to testify, defendant has failed to overcome the presumption that the complained-of action by defense counsel constituted trial strategy. The record shows that defendant, in his affidavit, asserts that defense counsel advised him: "[I]f I did not testify the Judge would find me guilty but that if I testified as he told me to, the Judge would be understanding and I would be better off." This statement is evidence that defense counsel's advice was a trial tactic to get the court to favor defendant and to make defendant's version of the events appear more credible.

Furthermore, defendant did not receive ineffective assistance as a result of defense counsel's failure to present certain evidence to the trial court. Defendant alleges defense counsel failed to adduce exculpatory testimony from Officer Pena that Wright admitted possession and ownership of the drugs. What effect defense counsel's failure to elicit certain testimony from Officer Pena had upon the jury's verdict is merely hindsight and speculation. In our view of the entire record, however, we do not believe that defendant received ineffective assistance of counsel.

For the above reasons, we affirm defendant's conviction and sentence for possession of cocaine with intent to deliver.

Affirmed.

CERDA and GREIMAN, JJ., concur.