NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220627-U

NO. 4-22-0627

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 8, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Ogle County |
| CASIMIR D. WILLIAMS, | ) | No. 17CF23 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John C. Redington, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Zenoff and Doherty concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding (1) the trial court did not err by
dismissing defendant's postconviction claims at the second stage of proceedings
where defendant failed to make a substantial showing of a constitutional violation
and (2) defendant failed to establish that his postconviction counsel provided
unreasonable assistance by failing to attach an affidavit in support of his claims.

¶ 2    Defendant, Casimir D. Williams, appeals the trial court's second-stage dismissal

of his postconviction petition. On appeal, he argues his postconviction counsel provided

unreasonable assistance by failing to attach an affidavit to the petition in support of his claim.

We affirm.

¶ 3                          I. BACKGROUND

¶ 4    In April 2017, the State charged defendant by amended information with five

counts arising from a January 24, 2017, intrusion into a home in which a resident, Jeremy Baker,

was shot. Defendant was charged with two counts of home invasion (720 ILCS 5/19-6(a)(3)

(West 2016)), one count of aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2016)), and two counts of armed robbery (720 ILCS 5/18-2(a)(2) (West 2016)).

¶ 5        In September 2018, defendant waived his right to a jury trial and proceeded to a bench trial. Jeremy Baker testified that Eddie Blaylock contacted him by phone and arranged for Jeremy to sell Blaylock two ounces of cannabis for $500. Jeremy testified when Blaylock arrived at Jeremy's home for the purchase, Blaylock left the front door open and then shortly thereafter fell to the ground when two other men entered the home with weapons. The two men took the cannabis Jeremy had intended to sell to Blaylock. Jeremy identified one of the men as defendant, and the other, who shot Jeremy, as Rayvon Motton. Theresa Baker, Jeremy's wife, corroborated much of Jeremy's testimony and identified defendant as one of the two armed men who came in after Blaylock.

¶ 6        Blaylock testified Motton devised the plan to steal the cannabis from Jeremy. Blaylock testified he, defendant, and Motton drove together to the area of the Bakers' home. Blaylock explained to defendant and Motton that once inside, he would lie on the ground. Blaylock noted both defendant and Motton were armed. Blaylock identified defendant as one of the two men who invaded the Bakers' home. In exchange for his testimony, Blaylock stated he was pleading guilty to residential burglary and would be sentenced to 10 years in prison. Motton testified similarly to Blaylock and identified defendant as one of the two armed men who took cannabis from the Bakers' home. In exchange for his testimony, Motton agreed to an open plea of guilty to aggravated battery with a sentencing cap of 30 years in prison. The State also introduced evidence of defendant's jail phone call to Stanisha Bryant, in which defendant stated the prosecution was trying to "smoke" him for "doing nothing but standing in the house."

¶ 7        Bryant testified on defendant's behalf, saying she and defendant were dating. She

said on January 24, 2017, they were together celebrating Bryant's brother's release from jail. The State presented rebuttal evidence that Bryant's brother was released from jail a week prior. Defendant testified he never went to the Bakers' apartment complex on January 24, 2017, and did not see Blaylock or Motton that evening. Defendant testified he began the evening with Bryant at a party but left after a disagreement with Bryant, and he stayed with his sister at a different apartment complex that evening. Sasha Sherman, a friend of defendant who was also at the party, testified similarly to Bryant and defendant.

¶ 8 The trial court found defendant guilty of one count of home invasion, one count of aggravated battery, and one count of armed robbery. Defendant was sentenced to 21 years in prison for home invasion, 21 years for armed robbery, and 6 years for aggravated battery, all to be served concurrently.

¶ 9 On direct appeal, defendant's counsel moved to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), arguing the appeal presented no issue of arguable merit. *People v. Williams*, No. 2-19-0197 (Jan. 21, 2021) (unpublished order under Supreme Court Rule 23(c)). This court (1) granted the motion, (2) found the evidence was sufficient to prove defendant guilty beyond a reasonable doubt, and (3) affirmed defendant's sentence.

¶ 10 In July 2021, counsel for defendant filed a petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). Defendant claimed his trial counsel was ineffective for failing to call Naomi Harris as a defense witness. Defendant's petition was accompanied by a signed affidavit, which alleged the following:

"a) By virtue of her text messages Ms. Harris would not have been able to deny that she was fully complicit in the planning of this robbery;

b) By virtue of her text messages Ms. Harris would have been forced to confirm that the [defendant] was never identified as being involved in the planning of the robbery nor ever asked to appear or participate in the robbery;

c) That the [defendant] was NOT the person referred to in her text messages that had a 9mm handgun;

d) That she was in fact the girlfriend of the [defendant's] co-defendant (Blaylock) who received significant concessions from the States Attorney;

e) That she had no evidence or records whatsoever, either by text message, phone calls or in person conversations to indicate or corroborate that the [defendant] was in any way a participant in this offense or involved in the planning in any way."

¶ 11    The trial court advanced defendant's petition to second-stage proceedings. The State filed a motion to dismiss defendant's petition, arguing, in July 2017, Harris was indicted for obstruction of justice (720 ILCS 5/31-4(a)(1) (West 2016)) related to the same incident for attempting to obstruct the prosecution of Blaylock by "resetting her cell phone and submerging it under water to destroy text messages between herself and Blaylock regarding his planning of a robbery with two other people." Harris pleaded guilty to attempted obstruction of justice in October 2018, after defendant's trial. The State argued defendant's trial counsel could not be considered ineffective since it was reasonable to assume Harris would have invoked her fifth amendment right against self-incrimination if called to testify. The State argued, in any event, Harris's testimony could not overcome the fact defendant was identified by four witnesses and implicated himself with his jail phone call to Bryant. The State also argued defendant's petition lacked an affidavit from Harris or an explanation why an affidavit was not attached.

¶ 12 Defendant replied to the State's motion to dismiss, arguing an affidavit from Harris was unnecessary because Harris's phone and text records were sufficient. Defendant also stated he was not claiming Harris would have "willingly provided exculpatory testimony on the [defendant's] behalf." Defendant went on to claim Harris "did not need to" testify because her complicity in the "planning and the carrying out of the armed robbery as evidenced by known and obtainable phone and text records would more than support the [defendant's] alibi defense."

¶ 13 The trial court agreed with the State's rationale and granted its motion to dismiss, finding defendant failed to make a substantial showing of a violation of his constitutional rights.

¶ 14 This appeal followed.

¶ 15 II. ANALYSIS

¶ 16 On appeal, defendant challenges the trial court's dismissal of his petition and seeks remand for new second-stage postconviction proceedings. Specifically, defendant contends remand is necessary where his postconviction counsel failed to provide reasonable assistance of counsel by failing to attach an affidavit from Harris or explain its absence.

¶ 17 "The [Act] provides a procedural mechanism through which criminal defendants can assert that their federal or state constitutional rights were substantially violated in their original trials or sentencing hearings." *People v. Buffer*, 2019 IL 122327, ¶ 12, 137 N.E.3d 763. A postconviction petition must clearly set forth the ways in which a defendant claims his constitutional rights were violated. 725 ILCS 5/122-2 (West 2020). "The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2020).

¶ 18 "The Act provides a three-stage process for the adjudication of postconviction petitions." *Buffer*, 2019 IL 122327, ¶ 45. "At the first stage, the circuit court has 90 days to

review a petition and may summarily dismiss it if the court finds it is frivolous and patently without merit." *People v. Pendleton*, 223 Ill. 2d 458, 472, 861 N.E.2d 999, 1007 (2006). "If the petition is not dismissed within that 90-day period, the circuit court must docket it for further consideration." *Pendleton*, 223 Ill. 2d at 472.

¶ 19 Once a postconviction petition moves from the first to the second stage, the trial court may appoint counsel to represent the defendant and the State may file responsive pleadings. *People v. House*, 2021 IL 125124, ¶ 17, 185 N.E.3d 1234. During the second stage, the court determines "whether the postconviction petition and any accompanying documentation make a substantial showing of a constitutional violation." *House*, 2021 IL 125124, ¶ 17. When such a showing is made, the petition is advanced for a third-stage evidentiary hearing. *House*, 2021 IL 125124, ¶ 17. However, if a defendant fails to make a substantial showing of a constitutional violation, his postconviction claims are subject to dismissal. *House*, 2021 IL 125124, ¶ 17. The court's dismissal of a defendant's claims at the second stage of proceedings is subject to *de novo* review. *People v. Johnson*, 2017 IL 120310, ¶ 14, 77 N.E.3d 615.

¶ 20 At the second stage, "[t]he inquiry into whether a post-conviction petition contains sufficient allegations of constitutional deprivations does not require the circuit court to engage in any fact-finding or credibility determinations." *People v. Coleman*, 183 Ill. 2d 366, 385, 701 N.E.2d 1063, 1073 (1998). Instead, all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true. *Pendleton*, 223 Ill. 2d at 473. A substantial showing of a constitutional violation measures "the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief." (Emphasis omitted.) *People v. Domagala*, 2013 IL 113688, ¶ 35, 987 N.E.2d 767. "Nonfactual and nonspecific assertions which merely amount to conclusions are not

sufficient to require a hearing under the Act." *Coleman*, 183 Ill. 2d at 381; see also *Pickel v. Springfield Stallions, Inc.*, 398 Ill. App. 3d 1063, 1066, 926 N.E.2d 877, 882 (2010) (" 'Well-pleaded facts' is a term that stands in contrast to 'conclusions.' ").

¶ 21        On appeal, defendant argues postconviction counsel's failure to attach an affidavit signed by Harris or explain its absence amounts to such unreasonable assistance this matter should be remanded, and such failure precludes a harmless error analysis. Defendant cites *People v. Turner*, 187 Ill. 2d 406, 719 N.E.2d 725 (1999), and *People v. Suarez*, 224 Ill. 2d 37, 862 N.E.2d 977 (2007), in support of his position.

¶ 22        Both *Turner* and *Suarez* involve the failure of postconviction counsel to comply with Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), which amounted to " 'virtually no representation at all.' " *Suarez*, 224 Ill. 2d at 48 (quoting *Turner*, 187 Ill. 2d at 415-16). In *Turner*, postconviction counsel omitted essential claims on behalf of the defendant and chose to move forward on the defendant's *pro se* petition. *Turner*, 287 Ill. 2d at 414. In *Suarez*, the sole issue was the failure of postconviction counsel to file a certificate of compliance with Rule 651(c) and whether a harmless error analysis was permissible. *Suarez*, 224 Ill. 2d at 41. We note defendant concedes Rule 651(c) is not applicable here because postconviction counsel was retained, not appointed, and no *pro se* petition was filed. See *People v. Smith*, 2022 IL 126940, ¶ 32.

¶ 23        Both *Turner* and *Suarez* are distinguishable from the instant case. Defendant's postconviction counsel drafted and filed a petition under a legally cognizable theory (*i.e.*, ineffective assistance of trial counsel for failing to subpoena a defense witness) and provided reasons why Harris should have been called to testify. Postconviction counsel even filed a reply to the State's motion to dismiss defendant's postconviction petition. This contrasts starkly with

*Turner*, where postconviction counsel "essentially did nothing to shape the petitioner's claims into the appropriate legal form," thereby rendering appointment of postconviction counsel "an empty formality." (Internal quotation marks omitted.) *Turner*, 187 Ill. 2d at 416-17.

¶ 24　　　　*Suarez* is distinguishable because, as defendant concedes, compliance with Rule 651(c) does not pertain to this case. *Suarez* is also distinguishable because, under section 122-2, affidavits are not necessary under circumstances like those here. As our supreme court has held:

> "[O]ur case law demonstrates that, when a defendant raises a claim of ineffective assistance of counsel in a postconviction petition based on counsel's failure to investigate or call a witness to testify, the petition may properly be dismissed at the second stage—whether an affidavit is attached or not—if the evidence presented in support of the claim does not make a substantial showing that counsel was ineffective. As such, our case law is in accord with the plain language of section 122-2 of the Act, which provides that allegations in a postconviction petition may be supported by 'affidavits, records, or other evidence.' " *People v. Dupree*, 2018 IL 122307, ¶ 40, 124 N.E.3d 908.

We therefore consider whether the evidence presented in defendant's postconviction petition amounts to a substantial showing defendant's trial counsel was ineffective.

¶ 25　　　　"A claim asserting the ineffective assistance of counsel is governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984)." *People v. Pingelton*, 2022 IL 127680, ¶ 53. Pursuant to *Strickland*, "a defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Dupree*, 2018 IL 122307, ¶ 44. "A reasonable probability is a probability sufficient to undermine

confidence in the outcome of the proceeding." (Internal quotation marks omitted.) *People v. Moore*, 2020 IL 124538, ¶ 29, 161 N.E.3d 125. "A reasonable probability of a different result is not merely a possibility of a different result." *People v. Evans*, 209 Ill. 2d 194, 220, 808 N.E.2d 939, 954 (2004). To prevail on a claim of ineffective assistance of counsel, a defendant must satisfy both prongs of the *Strickland* standard. *Moore*, 2020 IL 124538, ¶ 29. Effective assistance of counsel refers to competent, not perfect representation. *Evans*, 209 Ill. 2d at 220. There is a strong presumption that counsel's performance was a result of trial strategy. *People v. Mason*, 268 Ill. App. 3d 249, 255-56, 644 N.E.2d 13, 18 (1994). The evaluation of counsel's conduct does not extend to counsel's exercise of professional judgment, discretion, or trial tactics. *People v. Franklin*, 135 Ill. 2d 78, 118, 552 N.E.2d 743, 762 (1990).

¶ 26     Defendant fails to show deficient performance. In his initial petition, defendant claims his trial counsel was ineffective for failing to call Harris to testify as an alibi witness. In its response, the State argued Harris faced pending charges for obstruction of justice related to the same matter. The State contended it was reasonable to infer Harris would have invoked her fifth amendment privilege had defendant's trial counsel called her to the stand. In fact, defendant's own petition assertd Harris's testimony, if available, would not have been provided willingly. This is precisely the kind of testimony the fifth amendment privilege is designed to protect.

¶ 27     Moreover, while defendant claims trial counsel was ineffective for not calling on Harris to testify, he simultaneously argued Harris's testimony was unnecessary because her phone and text records were sufficient to support defendant's alibi defense. At trial, defendant called Detective Macklin of the Illinois State Police to testify about data extraction on the cell phones of both Harris and Blaylock. His testimony revealed Harris's phone had been erased and

made unworkable, hence her pending obstruction of justice charge at the time of defendant's trial. Presumably, the phone and text records upon which defendant claims to rely had to come from Blaylock's conversations with Harris. Defendant cannot reasonably argue Harris's testimony is unnecessary and then claim it was deficient performance for failing to call Harris as a defense witness.

¶ 28       Defendant also fails to show prejudice. Defendant's petition argues Harris's testimony provides an alibi. On closer examination, nothing about Harris's purported testimony would provide or corroborate an alibi for defendant.

¶ 29       Defendant first argues Harris would have been unable to deny she was fully complicit in the planning of the robbery. Harris's possible complicity in planning the robbery of the Bakers' home provides nothing exculpatory for defendant. If true, it would simply inculpate Harris and serve to reinforce the reasonableness of the State's assertion she would have declined to testify at all. Further, the level of speculation defendant engages in to reach this conclusion from the testimony about data extracted from Blaylock's phone falls well outside the category of "well-pleaded facts that are not positively rebutted by the trial record." *Pendleton*, 223 Ill. 2d at 473. In fact, when discussing Harris's involvement in planning or preparing for the armed robbery, codefendant Blaylock testified, "I mean, she really didn't have a role at all. Like, to be honest with you, sir, like, I regret calling her to come pick them up because if I would never have made that call to her, she would never [have been] involved in this situation at all."

¶ 30       Defendant also argues Harris would have been forced to confirm defendant was never identified as being involved in the planning of the robbery, nor was he asked to appear or participate. Again, this amounts to bare speculation unsupported by any testimony or evidence presented at trial. More importantly, even if Harris had been called and agreed to testify, she

could testify only to what she saw or heard directly, and she would not have been permitted to testify to such conclusory assertions as defendant claims. Regardless of defendant's involvement in the planning, the evidence presented at trial overwhelmingly established his presence and participation—irrespective of whether he was asked or volunteered—in the home invasion and armed robbery.

¶ 31    Defendant claims Harris would testify that he was not the person whom Harris referred to as having the 9-millimeter handgun. This is not an alibi. Illinois State Police Detective Nate Macklin, who extracted data from Blaylock's cell phone, testified a message from Harris to Blaylock indicated Harris had a friend who was selling a 9-millimeter handgun. But defendant was not charged or convicted for selling a handgun. He was convicted of armed robbery that involved a handgun, and the evidence indicated he was the person in possession of the .22-caliber pistol.

¶ 32    Defendant contends Harris would have testified she was Blaylock's girlfriend and that Blaylock received significant concessions from the state's attorney. Again, there is nothing about such testimony, even if offered, and even if true, that constitutes an alibi. Blaylock testified Harris was his girlfriend, and the subject of his plea agreement with the State was addressed during his testimony. As such, the same information defendant claims Harris would have provided was already before the trial court.

¶ 33    Finally, defendant argues Harris would testify she had no evidence defendant planned or participated in the offenses for which he was convicted. The conclusory and otherwise inadmissible nature of such testimony is clear. "Proving the negative, as in proving the positive, is still subject to the hearsay rules." *People v. Harris*, 162 Ill. App. 3d 618, 625, 515 N.E.2d 1272, 1276 (1987). Harris could not testify in such a conclusory fashion absent hearsay.

Additionally, defendant presented alibi witnesses at his trial who stated he was never at the Bakers' home or who said he was elsewhere at the relevant times. However, the State presented four witnesses who testified defendant was at the Bakers' home. Once again, evidence defendant claims Harris had was already before the trial court.

¶ 34        None of the testimony defendant claims Harris might have provided prejudices defendant by its absence. Therefore, defendant has failed to show his trial counsel was ineffective for not calling Harris as a defense witness, disregarding the reasonable likelihood he would have been unable to do so.

¶ 35        Because defendant cannot show his trial counsel was ineffective for failing to call Harris as a defense witness, under the *Strickland* analysis, he cannot show his postconviction counsel provided unreasonable assistance for failing to attach an affidavit of Harris for the same reasons. *People v. Zareski*, 2017 IL App (1st) 150836, ¶ 59, 84 N.E.3d 527 (stating the evaluation of reasonable assistance provided by postconviction counsel is also a *Strickland* type of analysis). The sixth amendment right to the effective assistance of counsel does not apply in a postconviction proceeding. *People v. Custer*, 2019 IL 123339, ¶ 30, 155 N.E.3d 374. Rather, the Act requires only that postconviction petitioners receive a reasonable level of assistance, "a standard that is significantly lower than the one mandated at trial by our state and federal constitutions." *Custer*, 2019 IL 123339, ¶ 30. We may consider "the totality of [the] circumstances" when evaluating the reasonableness of postconviction counsel's conduct. *Turner*, 187 Ill. 2d at 414. Whether postconviction counsel provided reasonable assistance is reviewed *de novo*. *People v. Jones*, 2017 IL App (4th) 140594, ¶ 31, 72 N.E.3d 449.

¶ 36        Even if postconviction counsel attached an affidavit from Harris validating the allegations in defendant's petition, nothing in the affidavit would have so benefitted defendant

that its absence was prejudicial. Considering the substantial likelihood Harris would have refused to testify or provide such an affidavit, defendant cannot now claim trial counsel's performance was deficient. As a result, counsel's failure or inability to attach such an affidavit constitutes harmless error, if it was an error at all. Remand "would serve no useful purpose and would merely delay the dismissal of the postconviction petition." *Pingelton*, 2022 IL 127680, ¶ 50. Defendant has not established his postconviction counsel failed to provide reasonable assistance.

¶ 37                                    III. CONCLUSION

¶ 38          For the reasons stated, we affirm the trial court's judgment.

¶ 39          Affirmed.