NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210518-U

NO. 4-21-0518

IN THE APPELLATE COURT

FILED
June 23, 2022
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Piatt County |
| MASON E. BROWN, | ) | No. 18CF64 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Rodney S. Forbes, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Harris and Holder White concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant failed to establish (1) trial counsel's performance was objectively unreasonable under prevailing professional norms and (2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. That is, defendant's claim of ineffective assistance of trial counsel failed on the merits, with the exception of two claims for which the record was not sufficient for direct appellate review.

¶ 2     Defendant Mason E. Brown appeals from the trial court's judgment of conviction and sentence. His appeal consists only of six individual ineffective-assistance-of-trial-counsel claims. Of those six, two could not be adjudicated because the record on direct appeal was insufficient. The remaining four issues were found to be without merit as defendant was unable to sufficiently establish prejudice from counsel's alleged deficient performance. As a result, we affirm defendant's convictions and sentence.

¶ 3                                    I. BACKGROUND

¶ 4         On August 24, 2018, the State filed a four-count information against defendant, charging him with two counts of criminal abuse or neglect of an elderly or disabled person (720 ILCS 5/12-4.4a (West 2016)) and two counts of aggravated cruelty to animals (510 ILCS 70/3.02 (West 2016)). The charges stemmed from the police investigation into the death of Ronald Blankenship, defendant's uncle. Blankenship died at defendant's residence from "very severe pneumonia" and medical neglect. When the police arrived at the residence, they found deplorable conditions in the home, not suitable for people or animals. Besides Blankenship, the police also found four dogs and three cats. Two of the dogs, those belonging to defendant, had to be euthanized due to their poor state of health. Defendant and two other individuals, Christie Brown (defendant's mother) and Justin Tatman, were arrested and prosecuted. Though each defendant was charged in a separate criminal case, the trial court sometimes conducted combined hearings, and the State sometimes combined filings.

¶ 5         The trial court appointed counsel to represent defendant. After two Piatt County attorneys noted a conflict of interest, the court appointed Christopher Amero of Decatur.

¶ 6         On September 12, 2018, the State filed a motion to compel, seeking an order directing defendant and the two codefendants to unlock their passcode-protected cell phones. The trial court had previously authorized a search warrant for the cell phones, but the detective was unable to conduct his forensic examination because the cell phones were locked.

¶ 7         At a combined hearing on the State's motion to compel, the trial court asked Amero defendant's position in relation to providing the State with the passcode information to unlock his phone. Amero stated he had no objection to the State's motion. Counsel for the two codefendants each raised objections. The court entered an order compelling defendant's compliance but continued the hearing for the codefendants.

¶ 8        At defendant's jury trial, the State presented the testimony of several witnesses, including (1) the police officer who responded to the initial call for medical attention, (2) the coroner, (3) the forensic pathologist who conducted the autopsy on Blankenship, (4) an animal control officer, and (5) the treating veterinarian. Defendant testified in his case-in-chief.

¶ 9        Defendant has not challenged the sufficiency of the evidence in this appeal, so we will provide only a summary of the evidence presented at trial. The police officer testified he responded to a medical call to defendant's residence on August 20, 2018. There, he found Blankenship slumped over a bed deceased. The home was in deplorable condition with garbage, urine, feces, and other debris throughout the home. According to the forensic pathologist, Blankenship died from "very severe pneumonia" and medical neglect, meaning he was "not given either the medical or physical necessities to continue to live." The pathologist said the dirt and material on Blankenship's body reflected his environment. A culture from his lungs revealed three different types of bacteria—each of which could alone cause death. He had a tracheostomy, which was the likely source of bacteria that had entered his body, including his lungs. He had underlying chronic heart disease, chronic respiratory problems, an enlarged liver, a "very enlarged" spleen indicative of an infection, evidence of "small strokes" in the base of his brain, scars from prior episodes of pneumonia, and inflamed and infected fingernails indicative of either trauma or chronic infection.

¶ 10       Witnesses also testified as to the two cocker spaniel dogs that were found in a room covered in urine, feces, and matted fur. The water source for the dogs was a bowl of "greenish brown" water. They had tumors—some ruptured—and severe skin infections. They were unable to see due to extreme matted fur around their faces. The treating veterinarian testified the condition

of one dog was so severe that euthanasia was the most humane option. The other dog was treated for 24 hours, but the veterinarian determined at that time the dog needed be euthanized as well.

¶ 11        After considering the evidence, the arguments of counsel, and the jury instructions, the jury found defendant guilty of all four charged offenses. The trial court sentenced defendant to five years in prison on count I (count II was dismissed based on the one-act, one-crime rule), and one and a half years in prison on both counts III and IV, all to run concurrently.

¶ 12        This appeal followed.

¶ 13                                        II. ANALYSIS

¶ 14        Defendant's only argument in this direct appeal is that his trial counsel rendered ineffective assistance by failing to do the following six things: (1) object to the State's motion to compel regarding his cell phone passcode; (2) appear at six pretrial hearings; (3) negotiate a "favorable" plea agreement; (4) request a speedy trial; (5) object to a tainted jury; and (6) file any posttrial motion. Defendant claims these errors, which he says equate to "almost nonexistent" representation at trial, support his argument that his "convictions should be overturned on appeal."

¶ 15                                        A. Forfeiture

¶ 16        As an initial matter, the State argues defendant has forfeited his claims of ineffective assistance on appeal by failing to raise them at trial and/or in a posttrial motion. The State also contends defendant did not request we review these claims for plain error. However, the State asserted, should this court decide to review the claims under the plain-error doctrine, defendant would not be able to satisfy either prong of the doctrine.

¶ 17        The State's argument is not well taken. The State does not acknowledge that defense counsel did not object at trial on the grounds of his own ineffectiveness. If we were to agree with the State on this issue and consider defendant's claims under the plain-error doctrine,

it would mean all ineffective-assistance claims would be considered unpreserved errors to be reviewed for plain error because it is not likely trial counsel would ever object to his or her own ineffective assistance.

¶ 18　　　　　Further, courts have noted claims of ineffective assistance and the plain-error rule overlap because a successful claim of ineffective assistance of counsel would necessarily satisfy the second prong of the plain-error rule. See *People v. McCarter*, 2011 IL App (1st) 092864, ¶ 37 ("The second prong of the plain error rule is triggered if a defendant can successfully prove ineffective assistance of counsel [because] this is considered a substantial impairment of fundamental rights." (Internal quotation marks omitted.)), *overruled on other grounds by People v. Reese*, 2017 IL 120011; see also *People v. Tayborn*, 2016 IL App (3d) 130594, ¶ 13; *People v. Wood*, 2014 IL App (1st) 121408, ¶ 56. Therefore, we will consider the merits of defendant's ineffective assistance claims independent of the plain-error doctrine.

¶ 19　　　　　　　　　　B. Ineffective Assistance of Counsel

¶ 20　　　　　Ineffective-assistance-of-counsel claims are evaluated under the two-prong test described by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Gayden*, 2020 IL 123505, ¶ 27. Under *Strickland*, a defendant must establish both that (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability exists that, but for defense counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* "[A] 'reasonable probability' is defined as a showing sufficient to undermine confidence in the outcome, rendering the result unreliable or fundamentally unfair." *People v. Patterson*, 2014 IL 115102, ¶ 81. The failure to establish either *Strickland* prong "precludes a finding of ineffective assistance of counsel." *Gayden*, 2020 IL 123505, ¶ 27.

¶ 21 To satisfy the deficiency prong of *Strickland*, the first prong, a defendant must demonstrate counsel's performance was so "inadequate 'that counsel was not functioning as the "counsel" guaranteed by the sixth amendment.' " *People v. Dupree*, 2018 IL 122307, ¶ 44 (quoting *People v. Evans*, 186 Ill. 2d 83, 93 (1999)). To satisfy the prejudice prong of *Strickland*, the second prong, a defendant must show there is "a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland*, 466 U.S. at 694). That is, the defendant must show a reasonable probability that, absent counsel's alleged error, the trial would have ended differently. *People v. Evans*, 209 Ill. 2d 194, 220 (2004). "A reasonable probability of a different result is not merely a possibility of a different result." *Id.*

¶ 22 There is a strong presumption that counsel's performance was within the wide range of reasonable professional assistance (see *People v. Mason*, 268 Ill. App. 3d 249, 255-56 (1994)), and the evaluation of counsel's conduct does not extend to counsel's exercise of professional judgment, discretion, or trial tactics (*People v. Franklin*, 135 Ill. 2d 78, 118-19 (1990)). We will examine each of defendant's claimed errors.

¶ 23 1. *Failing to Object to State's Motion to Compel*

¶ 24 Defendant argues Amero was "seriously ineffective" when he failed to object to or challenge the State's pretrial request for an order compelling him to produce his passcode to unlock his cell phone. The State had received warrants to search the cell phones of defendant, Brown, and Tatman. However, all three phones had passcodes, which prevented investigators from searching the contents of the phones. As a result, the State filed a motion to compel, asking the court to order all three individuals to "unlock" his or her respective phone.

¶ 25 At the combined September 25, 2018, hearing on the State's motion to compel, Amero told the trial court he did not "necessarily know that [he had] any basis to object to that, assuming that the court signed off on a search of a cell phone." He followed with, "I can't think of any basis to object then, Your Honor." Brown's and Tatman's attorneys objected, asking for more information from the State and more time to research this "very new" area of law. The court allowed a continuance as to Brown and Tatman but ordered defendant to provide the State the requested information. The record before us does not include the resolution of the State's motion related to the two codefendants.

¶ 26 Defendant claims this "[e]arly breach of [his] phone caused him to be unequally protected as compared to the two Co-Defendants." He claims, due to Amero's deficient performance, the State, while armed with the contents of defendant's phone, conducted interviews with the codefendants. He contends Amero "caused a different and worse result for his client."

¶ 27 Defendant speculates that Amero's failure to challenge the motion to compel led to the State's awareness of "additional discovery material" recovered from defendant's phone. He relies on comments made by the prosecutor at two separate hearings. First, at a December 11, 2018, hearing, Amero announced defendant's readiness for trial. The prosecutor responded the State was not ready for trial, as she was "aware of additional discovery material that's coming in the form of interviews being conducted this week."

¶ 28 Second, at a March 10, 2020, hearing, Amero again announced defendant's readiness for trial. The prosecutor likewise announced the State's readiness for trial but requested a final pretrial hearing after March 18, 2020, because the attorney for one of the codefendants was meeting with the State "concerning some discovery issues that are outstanding, and some things that that side wants the State to know."

¶ 29    Defendant claims the "early breach" of his phone, which occurred only because Amero failed to challenge the State's motion to compel, led to further investigation and additional discovery for the State. The problem with defendant's argument is he points to no explanation whatsoever of how this prejudiced him. He states only that the " 'additional discovery' most likely or even most certainly came from the breach of [defendant]'s cell phone" and the "early breach of [his] cell phone passcode led to the State holding interviews and obtaining additional discovery from the Co-Defendants." He asserts Amero "caused a different and worse result" for defendant than that of his codefendants.

¶ 30    Defendant does not explain how the State's subsequent interviews or the receipt of additional discovery prejudiced him. That is, he does not indicate what information (1) the State learned from the interviews or from the "additional discovery" or (2) was on his phone that negatively impacted his trial. More importantly, he does not reasonably contend that, absent Amero's acquiescence to the motion to compel, the result of the trial would have been different.

¶ 31    A claim of ineffective assistance can be sustained only if defendant can demonstrate prejudice. Here, defendant does not identify the content or explain the significance of (1) codefendant's counsel's meeting with the State, (2) the State's interviews, or (3) the "additional discovery." In other words, defendant does not claim to know, or at least he does not explain, whether the "additional discovery," the interviews, or the meeting had anything to do with the contents of his phone. His entire argument is speculation and without factual support. On this basis, defendant cannot successfully demonstrate how or if Amero rendered ineffective assistance.

¶ 32    Further, defendant claims Amero failed to subject the State to its burden of proving the contents of the phone fell within the foregone-conclusion exception to the state and federal constitutional privileges against self-incrimination. U.S. Const., amend. V; Ill. Const. 1970, art. I,

§ 10. Because Amero failed to challenge the motion to compel, defendant claims, the State was relieved of its burden to demonstrate via an evidentiary hearing that the production of the cell phone passcode (assuming the production was considered testimonial), fell within the foregone-conclusion exception. See *People v. Spicer*, 2019 IL App (3d) 170814, ¶ 23 (finding the act of producing a cell phone passcode is testimonial). But see *People v. Sneed*, 2021 IL App (4th) 210180, ¶ 63 (finding the act of producing a cell phone passcode is not testimonial).

¶ 33 Regardless of whether the provision of a passcode is testimonial in nature, triggering the application of the fifth amendment and the arguable application of an exception thereto, defendant has failed to demonstrate any facts to satisfy the second prong of the *Strickland* standard. That is, defendant has not presented *any* evidence to demonstrate Amero's failure to object and the subsequent provision of defendant's passcode resulted in the discovery, production, introduction, or admission of evidence which altered the outcome of the trial—an outcome different from that without counsel's alleged error. As stated, to successfully frame an ineffective-assistance-of-counsel claim, defendant must demonstrate Amero's alleged error was not only deficit but that it negatively impacted the result of the trial. Defendant has failed to do so. He has not demonstrated he suffered prejudice from counsel's alleged error.

¶ 34 2. *Absence From Pretrial Hearings*

¶ 35 Defendant next argues counsel's ineffectiveness denied him a fair trial when counsel failed to appear "six times over a period of two and a half years" at various hearings, causing (1) a delay in the trial "over and over again" and (2) the State to withdraw its "beneficial plea offer." Indeed, the record shows Amero was absent from six pretrial hearings because he had either agreed to or requested a continuance or was in trial elsewhere. Of relevance is that all the pretrial hearings Amero missed were status calls. No hearings of substance were carried out

- 9 -

without Amero present. In fact, nothing other than requested continuances were discussed at each of the missed hearings.

¶ 36    Also, defendant contends during one of the absences, a codefendant's counsel, Mr. Wessler, "stepped in" for Amero. At the June 9, 2020, hearing, the following exchange occurred:

"MS. DOBSON [(ASSISTANT STATE'S ATTORNEY)]: Judge, I believe Mr. Wessler is appearing for Mr. Amero on [defendant's case].

THE COURT: Mr. Wessler, are you appearing for Mr. Amero?

MR. WESSLER: Mr. Amero didn't say anything about appearing for him. He told me he had discussed it, but I'm happy to stand in and represent what he told me. That's fine.

THE COURT: We're not anticipating Mr. Amero actually being here today?

MR. WESSLER: Correct. No. He indicated that he discussed this with his client and neither of them have an objection to continuing to the September pre-trial and the October Jury trial term.

MS. DOBSON: Please show that by agreement, Your Honor.

THE COURT: Is that correct, sir?

[DEFENDANT]: That is correct, Your Honor.

THE COURT: You understand that if I allow this, it won't be tried before a jury before October 5th, 2020?

[DEFENDANT]: Correct, Your Honor.

THE COURT: This is on your motion or by agreement I should say?

[DEFENDANT]: By agreement; yes, sir."

Defendant characterizes this exchange as "a clear case of Attorney Amero creating a conflict of interest that could have harmed his client and could have been avoided by his own attendance to his client's needs." He further claims these "careless and reckless attorney absences are quintessentially deficient representation falling below objective stands [(*sic*)] of reasonableness."

¶ 37 Although we do not condone Amero's absences or the numerous trial continuances, we disagree with defendant's characterization of the circumstances. First, we do not find Amero created a "conflict of interest" during the status hearing when Wessler recited to the trial judge his understanding of Amero's amiable position to a continuance. Second, we find defendant has provided no argument as to how these alleged absences prejudiced him. See *People v. Davis*, 304 Ill. App. 3d 427, 442 (1999) (finding no ineffective assistance of counsel where counsel's absence did not leave defendant unrepresented at substantial hearings and defendant failed to show how absence prejudiced him).

¶ 38 Defendant has not demonstrated that Amero's failure to attend the six pretrial hearings rendered the result of the trial unreliable or the proceeding fundamentally unfair. See *People v. Manning*, 241 Ill. 2d 319, 327 (2011) (stating under the second *Strickland* prong, a defendant must prove counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair). In this court's opinion, without further explanation from defendant, we cannot say counsel's spotty attendance prior to trial affected the reliability or fairness of defendant's trial.

¶ 39 3. *Failure to Timely Negotiate a Plea Agreement*

¶ 40 Defendant next claims that, sometime between September 2018 and November 2020, Amero received "a favorable plea" offer from the State, which remained open through April 2021. Defendant claims Amero "failed to persuade his client of the benefits of this plea." The offer

- 11 -

was for the State to recommend a term of probation and dismiss the remaining three counts in exchange for defendant's plea to one count of aggravated cruelty to an animal. Defendant claims the "goodness/benefit to [him] of this plea offer is undeniable and clear." He claims Amero did not effectively advise him to accept this offer in a timely manner, as the offer was revoked by the new administration after a new State's Attorney was elected in November 2020.

¶ 41            Because the analysis and resolution of this issue is beyond the record on direct appeal, we decline to address defendant's claim. Conversations defendant had in private with Amero are not part of the record on appeal. Thus, this is a claim better suited for a collateral proceeding where the record could be properly developed for resolution of the claim. See *People v. Veach*, 2017 IL 120649, ¶ 46 (holding ineffective assistance of counsel claims may sometimes be better suited to collateral proceedings when the record on direct appeal is incomplete or inadequate for resolving the claim). Defendant may, if he so desires, pursue his claim through a petition filed under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)).

¶ 42                            4. *Failure to Request a Speedy Trial*

¶ 43            Defendant next contends Amero was ineffective for failing to demand a speedy trial. He claims he was "not being given competent speedy trial advice by his AWOL [(absent without leave)] counsel."

¶ 44            Like the issue above, we find this claim to be better suited, if defendant desires to pursue the same, for a collateral proceeding where the record regarding conversations between defendant and Amero can be fully developed. Whether Amero was ineffective for failing to demand a speedy trial may depend on the conversations between the two of them and, if Amero explained the demand to defendant, whether defendant understood the consequences that such a

demand could have affected Amero's preparedness for trial. Thus, we decline to address this claim in this appeal.

¶ 45                              5. *Failure to Ensure an Impartial Jury*

¶ 46          Defendant also contends Amero was ineffective when he failed to object to (1) prejudicial outside information brought to light during jury selection in the presence of the jury pool and (2) the acting bailiff's son as a juror. We find defendant cannot establish he was prejudiced by counsel's failure to object to either circumstance.

¶ 47          During jury selection, one member of the pool, when questioned whether she had "heard or read anything about this case," indicated she had. The following exchange occurred:

"THE COURT: And without stating specifically what you heard or read, could you state the source? How you gathered the information?

JUROR: My husband worked for the plumber that was in the house several times.

THE COURT: I see.

JUROR: He advised me.

THE COURT: Would you be able to put that information aside and decide this evidence just based on the evidence that you hear in the court today?

JUROR: I've seen pictures.

THE COURT: You have to say yes or no, ma'am.

JUROR: No."

¶ 48          The trial court later asked all potential jurors, as a group, if they believed they could be fair and unbiased to all parties. Only the subject juror stated she could not, reportedly for the reasons stated previously. She also indicated she did not "understand and accept" the principle that

the defendant was presumed innocent. She also indicated she would not sign a "not guilty verdict" if she believed the State had not proved its case beyond a reasonable doubt. Upon agreement by both sides, she was removed for cause.

¶ 49       Defendant also challenges Amero's representation based on the questioning of another potential juror. This juror stated he could not "understand and accept the principle that the defendant is presumed innocent of the charges against him." He explained he "used to be a former health care worker in an Alzheimer's unit, and [he] know[s] a lot about what this is." The trial court asked this juror directly: "So you do not believe that the defendant is presumed innocent of the charge against him?" The juror responded: "From what I've seen over my years, probably not." Amero asked the court for a sidebar and there, asked for "a new pool." The court denied Amero's motion. Upon agreement by both sides, this juror was also removed for cause.

¶ 50       As we have previously stated, to successfully claim ineffective assistance of counsel, defendant must demonstrate prejudice. *Domagala*, 2013 IL 113688, ¶ 36. Thus, the inquiry for this court is whether Amero's failure to object to the jurors' comments, or "outside information" as defendant characterizes it, prejudiced defendant.

¶ 51       "Under both the United States and the Illinois Constitutions, a criminal defendant is entitled to a jury that is impartial, which means ' "a jury capable and willing to decide the case solely on the evidence before it." ' " *People v. Kirchner*, 194 Ill. 2d 502, 528-29 (2000) (quoting *People v. Olinger*, 176 Ill. 2d 326, 353 (1997), quoting *Smith v. Phillips*, 455 U.S. 209, 217 (1982)).

¶ 52       The venire members mentioned above were not selected to sit on the jury. The jurors who were selected stated they agreed and understood the principle that defendant was presumed innocent. Defendant fails to point to anything specific to prove the seated jurors were influenced by the two excused jurors' comments so as to prejudice him. Viewing the *voir dire*, in

light of the evidence presented at trial, we cannot reasonably conclude defendant was found guilty on the basis of anything other than the evidence presented. The overwhelming evidence at trial supported the jury's verdicts of guilt. Thus, we conclude with reasonable certainty defendant cannot demonstrate ineffective assistance of counsel on this ground, as he was not prejudiced by the jurors' comments during *voir dire*.

¶ 53        Defendant further contends Amero was ineffective for failing to request a mistrial when it was brought to the trial court's attention that one of the jurors was the son of the bailiff assigned to be with the jury during deliberations. The court stated it did not see this circumstance as a basis for a removal for cause. Amero stated he had "no issue with it at all." Defendant claims the "father/[b]ailiff's presence [was] prejudicial to fair and impartial deliberation." He contends there was "an inherent problem with [the juror] deliberating under the watch of his father," in that the juror could "be influenced" by his father's presence. Defendant fails to adequately explain how the presence of the bailiff, who presumably has no vested interest in the outcome of the trial, would prevent the juror from being fair and impartial. Absent any evidence or even a good-faith allegation of impropriety, we find no prejudice to defendant to satisfy the second prong of the *Strickland* standard.

¶ 54                        6. *Failure to File a Posttrial Motion*

¶ 55        Lastly, defendant argues Amero failed to file any posttrial motions. He does not, however, specify what motions counsel should have filed or how any such motions would have been successful, so as to satisfy the prejudice prong. The only way for defendant to demonstrate prejudice would be if the absence of a posttrial motion forfeited any of his claims on appeal and if any of those forfeited claims would otherwise have been found to be meritorious on appeal. If the claims were without merit, defendant could not show prejudice even if they were forfeited, and

thus he would be entitled to no relief on this claim of ineffective assistance. See *People v. Williams*, 181 Ill. 2d 297, 320-22 (1998) (considering merits of issues in order to determine that counsel was not ineffective for having failed to preserve them). Because defendant does not identify any potentially meritorious issue which could have been the subject of a posttrial motion, we cannot determine the lack of filing any such motion had a prejudicial effect on defendant. Notably, counsel is not ineffective for failing to file futile motions. *People v. Hartfield*, 2022 IL 126729, ¶ 38. Consequently, defendant failed to establish Amero was ineffective for failing to file any posttrial motion.

¶ 56 In sum, even if Amero's performance was deficient, defendant has not set forth an arguable claim of prejudice with any of his claims. See *Domagala*, 2013 IL 113688, ¶ 36 (stating to prove prejudice, defendant must show reasonable probability that, but for trial counsel's errors, the results of the proceedings would have been different). Given the evidence of defendant's guilt presented at trial, there is no reasonable probability that defendant would have been acquitted but for Amero's shortcomings. Therefore, defendant was not arguably prejudiced by any of Amero's alleged deficiencies, and Amero was not ineffective in representing defendant.

¶ 57 III. CONCLUSION

¶ 58 For the reasons stated, we affirm the trial court's judgment.

¶ 59 Affirmed.